WILSON v. DAVIS.

4-6422                                       153 S. W. 2d 171

Opinion delivered July 7, 1941.

*Geo. E. Pike,* for appellant.

*Peyton D. Moncrief, A. G. Meehan, J. M. Brice* and *John W. Moncrief,* for appellee.

HUMPHREYS, J.   Appellees brought suit in the chancery court of Arkansas county on October 6, 1938, alleging that they were the owners of a building in the city of DeWitt, and that the front part of the building including doors, windows, hinges, lights and porch were attached to and were a part of the building.   Appellees also alleged that they are the owners of the land immediately in the rear of the building upon which is a projection room built of concrete and tin and all wiring and light fixtures attached to the building are a part of the same, and that such fixtures can not be removed without defacing or impairing the value of the building.   They also alleged that appellant was threatening to tear out all of the fixtures and parts of the building which would cause them irreparable damage and injury.   They prayed for an order of the court enjoining and restraining appellant from entering upon said property and removing said appurtenances and fixtures and for damages.

A temporary restraining order was issued enjoining appellant from removing or tearing from the building the front end, the porch, doors, hinges, locks, windows, light wires, concrete foundation in the rear of the building and the tin shed located thereon.   No notice of the application for the restraining order was given appellant, but the order was served on him on the 6th day of October, 1938.

On October 28, 1938, appellant filed a motion to vacate the temporary restraining order alleging that no summons was ever served upon him notifying him of the

pendency of the suit, and that he never received any notice that plaintiffs would apply for a temporary restraining order.

It seems that no action was taken by the court on the motion to vacate the temporary restraining order.

Appellant filed an answer denying each and every material allegation contained in the complaint and prayed that it be dismissed.

He also filed a cross-complaint alleging that he entered into possession of the building in question on the first day of February, 1926, under a written contract with T. J. Davis which contained a provision to rent the building for additional time until January 1, 1933, at $75 per month. He alleged that the lease was renewed from time to time by attaching written riders to the contract, and that subsequent to the death of T. J. Davis, R. M. Davis, one of the appellees, continued to accept the rentals from such building under the terms of the lease. He also alleged that the written contract contained a provision as follows:

"And the second party reserves the right when he discontinues the use of said building to remove therefrom all furniture, fixtures, woodwork, screen, booths, and other material of every kind and nature placed there by him or by others for him. Except flooring."

A copy of the lease was attached to the cross-complaint and marked "Exhibit A." Appellant alleged in his cross-complaint that appellees without notice to him, unlawfully seized the building described in the lease contract and refused to allow appellant to remove the front partition from the building of the value of $150, the front porch of the value of $100, the projection booth of the value of $300, light wires of the value of $40, and screen frames and ticket booth of the value of $100 all of which belonged to him under the reservations set out in the contract and that appellees deprived appellant of $65 rent which he paid them for the month of October, 1938, and that he was evicted from the building before the expiration of the term. He prayed for $775 damages

on account of the breach of the contract by appellees and for a mandatory injunction directing him to deliver possession of the personal property aforesaid to him.

Appellees filed an answer in reply to the cross-complaint alleging, in substance, that after the death of T. J. Davis in 1935, appellant had no contract with appellees or with R. M. Davis, administrator of the estate of T. J. Davis, deceased, for the occupancy of the building or of the land in the rear of the building; denied that T. J. Davis was the true owner of the building, and the land in the rear thereof in 1926 when appellant rented said property from him; denied that appellant had paid the rent for the month of October, 1938, but stated that appellant was in arrears with the rent. They also prayed for an accounting of all checks, receipts, and other evidences showing payment of rent. They also alleged that appellant had built for himself another building to operate a picture show and had moved into the new building and left the old building open and exposed to the danger of trespassers and vandalism and fire hazard and that appellant had torn out and destroyed doors, hinges, locks, light wiring and permanent fixtures. They alleged that they had been damaged in the sum of $766.90 on account of his removal of the fixtures from the building and for the removal of the building and projection booth, etc., in the rear of the building which had been attached to the building.

The cause was submitted to the court upon the pleadings and the testimony introduced by the respective parties which resulted in a finding that neither the appellees nor appellant had been damaged in any sum whatever, and based upon such finding rendered a decree dismissing appellees' complaint and appellant's cross-complaint for want of equity, and that appellees were entitled to retain, keep and hold all of the fixtures and personal property located in the building, and that neither appellees nor appellant should recover any damages, and denied a mandatory injunction directing the appellees to deliver the possession of the remaining property, and that the costs incurred should be borne by each equally.

From the findings and judgment of the court dismissing the cross-complaint of appellant and from the findings and decree of the court refusing the issuance of a mandatory injunction appellant prayed and has duly prosecuted an appeal to this court.

The lease contract relied upon by appellant as authority for dismantling the building and removing therefrom all the improvements he had made therein and the structures he had placed on the land back of the building in remodeling same for use as a picture show was introduced in evidence. It contains erasures appearing in the face of the instrument and is as follows:

"Contract of Lease

"Know all men by these presents:

"That this contract of lease, made and entered into on this the 1st day of February by and between T. J. Davis, party of the first part, and Ray A. Wilson, party of the second part, both of DeWitt, Arkansas.

"Witnesseth: That for and in consideration of the sum of $65 per month, payable on the first of each month, the party of the first part does hereby lease to party of the second part his brick building on south side of the court square, in the town of DeWitt, Arkansas county, Arkansas, formerly occupied by the DeWitt Pharmacy for a period of one year with the option on the part of the second party of retaining said building another year or as much longer as he may desire up to Jan. 1, 1930 1933, at $75 per month payable as above stated. Immediate possession is to be given to second party.

"It is expressly understood and agreed that the second party may remodel said building in any way he may see fit at his own expense to make it suitable for the operation of a picture show therein, both as to floor, front and rear entrance of building or in any other way without impairing or materially weakening the structure. Second party may at his option build an operating booth at the outside of the building at rear if he so desires, and make any changes he may deem necessary for the suc-

832

cessful operation of a picture show therein except altering east and west walls.

"It is further expressly understood and agreed that in the event the second party gives up the building, his assigns or successors is to replace the glass in front of the building as it is now if the owner so desires and lower floor, to level, replace building in same condition as received. And the second party reserves the right when he discontinues the use of said building to remove therefrom all furniture, fixtures, woodwork, screen, booths, and other material of every kind and nature placed there by him or by others for him. Except flooring.

"Given under our hands this 1st day of February, 1926.

"T. J. Davis,
    "Party of the First Part.
"Ray A. Wilson,
    "Party of the Second Part."

It contains indorsements extending the lease from year to year and also the amounts to be paid for rent, the last indorsement appearing being as follows:

"It is hereby agreed that this lease attached is extended for the term of one year beginning January 1, 1935. Amount of rent to be $65 per month. Attached to and made a part of lease this 8th day of December, 1935.

"R. A. Wilson,
"T. J. Davis."

T. J. Davis died on the 5th day of June, 1935. He owned only a small interest in the store building and did not own the land in the rear of the building at all. That was owned by appellees. A short time after his death, R. M. Davis, one of the appellees, was appointed administrator for the estate of T. J. Davis, deceased. R. M. Davis testified that after the death of T. J. Davis appellant said something to him about repairing the floor and that he asked appellant if he had any contract and that he was told by appellant that he had no contract. Appellant denied that he made such a statement to R. M.

Davis. The testimony reflects without dispute that appellant made no renewal contract and obtained no extension of his contract with the administrator of the estate of T. J. Davis, deceased, or with anyone claiming to own an interest in the property after the death of T. J. Davis. It seems that the Robinsons and the Davises and perhaps others became involved in a lawsuit as to the ownership of the store building immediately after the death of T. J. Davis and that during the pendency of the suit appellant paid no rent to anyone. He testified that he deposited same in one of the banks awaiting the result of the suit so that he might pay the rent to the party or parties entitled thereto. Finally Miss Jane Davis, one of the appellees, purchased the interest of the remainder of the Davis heirs and the Robinson heirs, and after acquiring title thereto appellant paid the back rent to R. M. Davis and according to the evidence paid him rent down to and including the month of October, 1938. Nothing was said between them about the extension of the old contract or whether it was in existence, but it seems that he paid him the amount per month which the last extension of the contract provided should be paid. During the summer or fall of 1938, appellant purchased land and constructed a picture show or building thereon. He notified appellee, R. M. Davis, that he was going to move into the new building either before or about the time he made the last payment of rent, and that said appellee might rent the store building to someone else and mentioned two parties to him that might be interested in renting it, but they were not parties who would likely rent it to run a picture show. R. M. Davis then entered into negotiations for the rental of the property to a Mr. W. W. Davis, not related to him, whereupon appellant removed the projection building he erected at the back end of the store and which was attached in a way to the store building, tore the doors out of the house and left practically nothing except the concrete upon which it rested. He went into the building and removed all the chairs except the two rows of children's chairs all of which were screwed down to the floor and in doing so

jerked the seats out and did considerable damage to the floor. He also removed everything around the curtain and tore it so that it could not be used again and tore the celotex off the wall in the back of the building. He tore most of the wiring out of the building and left part of the wiring hanging. He cut the light fixtures off the wall so short they could not be used again. He left the back end of the building open after taking off the celotex, the removal of which left one hole in the back end of the building six feet by six feet, another hole two feet by six feet, another hole four feet by four feet. Appellant later put some strips or slats across the front end of the building. In other words he dismantled the building save and except the front part of it and damaged it considerably practically destroying the ticket booth. He had not removed the porch in front of the building nor the two rows of children's chairs. At this juncture appellee, R. M. Davis, discovered what was being done and brought suit to prevent further removal of property from the building. While attempting to put the door back and stop the holes so as to prevent trespassers from entering the building, appellant appeared on the scene. After some discussion as to respective rights, appellant, according to the weight of the evidence, said to appellee, R. M. Davis, "I am through with the whole building if you will let me get those seats out, then you can go ahead and have it." He took the chairs out the next morning.

S. A. Gentry testified that he was hanging some doors in the building for Mr. Davis, which was after the injunction suit had been brought, and Mr. Wilson came by and said to Mr. Davis, "You can't do that." Mr. Davis said, "Why can't I protect my building?" and he (Wilson) told him (Davis) he couldn't do it; that he was hanging the doors and Mr. Wilson was objecting. Mr. Wilson walked off a few steps and then came back. They had a conversation, and he understood him (Wilson) to say that he would get the seats out and let him (Davis) have it. He further stated that Mr. Wilson said to Mr. Davis, "I will get the seats out and let you have it." He further stated that Mr. Wilson did not say any-

thing about taking anything except the seats and that he understood that Mr. Wilson was turning the building over to Mr. Davis, but that he (Wilson) was to get the seats. He said that the way he understood it was that he (Wilson) told Davis he could have the building. According to the weight of the evidence appellant removed practically everything of value out of the building and from behind the building in total disregard of the injury to the building in its original condition.

We have concluded that appellant's lease contract had expired with the last extension thereof and that thereafter no provision of same was in force and effect. His right to remove the repairs he had placed upon the original property fell with the expiration of the contract. He did not move out at the expiration of the contract or attempt to do so, but remained in the building and used it as a picture show without consulting anyone. He made no effort to get an extension of his original contract or to make a new one. We think he clearly abandoned any rights he might have under the contract to dismantle the building or waived his right to dismantle it and remove therefrom the repairs he had made thereon by his acts and conduct. We do not think that two or three years thereafter he could rely upon the provisions of his original contract which reserved in him the right when he discontinued the use of the building to remove therefrom all "furniture, fixtures, woodwork, screen, booths and other material of every kind and nature placed there by him or by others for him. Except flooring." The contract itself contains erasures favorable to appellant, and he should have produced the contract when he was asked immediately after the death of T. J. Davis whether a written contract existed between him and T. J. Davis. One of the erasures from the contract was as follows:

"It is further expressly understood and agreed that in the event the second party gives up the building, his assigns or successors is to replace the glass in front of the building as it is now if the owner so desires and lower floor, to level, replace building in same condition as received."

If this provision had not been erased from the contract, appellant would have no right to remove anything from the building without leaving it in the same condition it was in when he remodeled it in 1926.

But even conceding that the contract with its changes and cancellations was a contract made and entered into between T. J. Davis and Ray A. Wilson we think appellant clearly abandoned and waived any rights he had thereunder when the contract expired unless he had moved out. He was nothing more nor less after the expiration of the contract than a tenant by sufferance, and under such tenancy would not have any right to dismantle the building when he moved out. The written right to do so expired when he failed to move and, instead retained possession of the building by sufferance only.

But aside from all this, even after the injunction proceeding was brought, according to the weight of the evidence in this case, appellant agreed to turn the building over to appellees on condition they would allow him to remove the remaining seats which had not been removed from the building. We think this was clearly a compromise agreement of all their differences, and that it was supported by sufficient consideration. A good faith controversy existed between them as to whether appellant had any right to dismantle the building when he moved out of same and the damage he had already done to the building in removing fixtures, etc., therefrom. The settlement of this good faith controversy by allowing appellees to take the building as it then stood and appellant to take the remainder of his chairs was a valuable consideration and supported the compromise and settlement.

No error appearing, the decree is affirmed.