DENNY WIEKHORST EQUIPMENT, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE, V. TRI-STATE OUTDOOR MEDIA GROUP, INC., APPELLEE AND CROSS-APPELLANT.

693 N.W.2d 506

Filed February 25, 2005.    No. S-03-1114.

William E. Gast, of William E. Gast, P.C., L.L.O., and Gene M. Eckel for appellant.

Richard A. Drews, of Taylor, Peters & Drews, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Douglas County District Court enjoined Tri-State Outdoor Media Group, Inc. (Tri-State), from removing an advertising structure (billboard) on land owned by Denny Wiekhorst Equipment, Inc. (Wiekhorst), until on or after July 2007. The court also ordered Tri-State to pay annual rent in a sum equaling 25 percent of the annual gross rent it received for advertising fees. Wiekhorst timely appealed, and Tri-State has filed a cross-appeal.

## SCOPE OF REVIEW

■ An action for injunction sounds in equity. In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004).

## FACTS

In 1985, Western Outdoor Advertising Company (Western) erected a billboard on property owned by Roy A. Smith, who operated H.P. Smith Motors. The billboard measures 14 by 48 feet and has two faces. It is attached to a 36-inch diameter, single-pole all-steel structure. The property on which the billboard is located overlooks Interstate 80 in Omaha, Nebraska.

The lease agreement between Western and Smith, dated July 1, 1985, provided for an initial 5-year term, renewable for "an additional" 5-year period, in the event that Western gave written notice of its intention to exercise the option to renew at least 10 days "prior to the expiration of the initial five-year period of this lease." The lease stated that Western was to pay rent of $1 per year, in return for which Smith received a discounted rate on advertising his business on the billboard. The lease was renewed once for a 5-year term beginning on November 11, 1991. The record does not indicate that any party attempted to renew the lease after this first renewal.

The record is unclear as to the precise date, but in 1997 or 1998, Tri-State purchased Western, allegedly acquiring its property, equipment, structures, and display and lease contracts. There is no evidence in the record concerning this transaction, and we are unable to determine what Tri-State actually purchased. Tri-State had no communication with Smith concerning its acquisition of Western's leases. Tri-State continued to renew permits to operate the billboard and to collect advertising fees without rendering payment of rent or other consideration to Smith. Nor did Tri-State account to Smith for advertising fees received. Smith sold his automobile dealership in 1997, and he had apparently forgotten about the lease until he was contacted by Wiekhorst about purchasing the property on which the billboard stands.

On or about April 25, 2002, Tri-State filed for bankruptcy protection under chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Middle District of Georgia, Columbus Division.

In July 2002, Wiekhorst purchased the real estate upon which the billboard is located from Smith for $500 in cash and a $7,000 donation to a charity of Smith's choice. The warranty deed was recorded on July 31. The property is approximately 5 feet wide at one end and 28 feet wide on the other, and approximately 60 feet long. One of the co-owners of Wiekhorst stated that the property is of little use for any purpose other than a billboard.

Wiekhorst sought relief from the automatic stay of the bankruptcy court and asked for a determination that the lease agreement concerning the billboard was terminated or had expired. In Tri-State's proposed chapter 11 plan, it sought to assume the alleged executory contract or unexpired lease at issue. Wiekhorst objected. The bankruptcy court found that the lease between Smith and Western had terminated or expired prior to the filing of the bankruptcy action, so there was no executory contract or valid unexpired lease for Tri-State to assume or reject. For this reason, the bankruptcy court granted Wiekhorst relief from the stay and sustained its objection to Tri-State's proposed assumption of the alleged lease. The bankruptcy court directed Tri-State to pay Wiekhorst an administrative fee of $3,600, based on $600 per month for 6 months.

Wiekhorst subsequently learned that Tri-State intended to remove the billboard from the property. Wiekhorst agreed, but insisted that removal could be accomplished only by compliance with certain conditions. The parties were unable to agree on the proper method of removal.

On February 28, 2003, Tri-State sent crews to Omaha to simply cut off the billboard pole at the ground and leave the foundation buried in the ground. Tri-State was prevented by Wiekhorst from entering the property to remove the billboard and subsequently claimed that it was damaged in the amount of $2,550 for expenses incurred, including labor and travel for the crews sent to remove the billboard.

On April 8, 2003, Wiekhorst filed an amended petition in Douglas County District Court, in which it stated that Tri-State claimed some ownership rights in the billboard through a lease agreement entered into on or before July 1, 1985, by and between Smith and Western. Wiekhorst alleged that Tri-State and/or Western had been in breach of the obligations stated in the lease agreement and that no consideration had been paid under the lease agreement since at least July 1997. Wiekhorst alleged that the lease agreement specifically provided that the billboard at issue was a part of the demised premises which reverted to the owner of the property upon expiration or breach of the lease. Wiekhorst asserted that it was the owner of the billboard and that Tri-State had no right to remove it.

The trial court found that the value of the property was totally dependent upon its use as a site for advertising and that if the billboard were removed 18 years after its construction and after changes to the Omaha Municipal Code, the property would become worthless. It found that Wiekhorst, as the owner of the property, would suffer irreparable injury if Tri-State were allowed to remove the billboard.

The trial court found that the billboard had not been removed during the term of the lease or any extension thereof and that there had not been any attempt to remove the billboard within a reasonable time after the expiration of the lease. It also found that Tri-State continued to collect fees for billboard advertisements without paying rent to the owner of the property.

The trial court concluded that Tri-State had conducted business after expiration of the lease as if it had a "de facto lease" with the landowner, first Smith and then Wiekhorst. It therefore enjoined Tri-State from removing the billboard from Wiekhorst's property until on or after July 2007, the completion of the fifth year of the parties' de facto lease. Tri-State was ordered to pay annual rent to Wiekhorst in a sum equaling 25 percent of the annual gross rent received by Tri-State for advertising fees.

As to Tri-State's counterclaim, the trial court found that Tri-State should not have dispatched sign removal crews to Omaha until a mutual agreement concerning removal had been reached. Since the parties had not agreed as to the method of removal, Tri-State was on notice that Wiekhorst would not consent to Tri-State's planned method of removal. The court dismissed Tri-State's counterclaim with prejudice.

Wiekhorst appeals from the order, and Tri-State has filed a cross-appeal.

## ASSIGNMENTS OF ERROR

Wiekhorst asserts that the trial court erred (1) in finding that a 5-year de facto lease existed between the parties, notwithstanding the fact that on February 19, 2003, the U.S. Bankruptcy Court for the Middle District of Georgia found that there was no valid unexpired lease from and after the April 2003 filing of Tri-State's bankruptcy petition; (2) in ruling that Tri-State owned the billboard at the time of trial, notwithstanding the fact that Tri-State failed to remove it within a reasonable time following the July 2000 expiration of the lease between the parties' predecessors in interest; and (3) in ruling, in effect, that Tri-State could remove the billboard at the termination of a de facto lease in July 2007.

On cross-appeal, Tri-State asserts that the trial court erred (1) in finding that a 5-year de facto lease existed between Tri-State and Wiekhorst from and after July 2002, after it was determined on February 19, 2003, by the bankruptcy court that there was no valid unexpired lease between the parties; (2) in finding that Tri-State failed to remove the billboard within a reasonable time after expiration of the lease, without determining that Tri-State had ever abandoned the billboard; (3) in finding that Wiekhorst would suffer irreparable harm without an adequate remedy at law,

which would justify injunctive relief preventing Tri-State from removing the billboard until July 2007; and (4) in denying Tri-State recovery of expenses incurred in sending crews to Omaha to remove its billboard, when the crews were prevented from doing so by a temporary restraining order obtained by Wiekhorst in violation of the automatic stay in Tri-State's bankruptcy case.

## ANALYSIS

Wiekhorst commenced this action in Douglas County District Court seeking an injunction and other equitable relief. An action for injunction sounds in equity. In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004).

We first consider the trial court's determination that a 5-year de facto lease existed between the parties. Each party claims this finding was erroneous because the bankruptcy court had previously found that there was no valid unexpired lease. Each party asserts that the doctrine of collateral estoppel prevented relitigation of the issue of whether a lease existed between them.

Tri-State filed its bankruptcy petition on April 25, 2002, in the U.S. Bankruptcy Court for the Middle District of Georgia. An order of relief was entered the following day. The bankruptcy court then entered an order authorizing the filing of certain lists, including a list of billboard leases, under seal.

On December 12, 2002, Wiekhorst filed an objection to Tri-State's assumption of the lease between Smith and Western. Wiekhorst alleged that the lease was dated July 1, 1985, expired on July 1, 1990, and was not extended and that Western and/or Tri-State were holdover tenants and at some point ceased paying rent. Wiekhorst alleged that it had attempted to collect rent from Tri-State after Wiekhorst purchased the property, but its requests for payment were ignored by Tri-State. An amended plan of reorganization provided that Tri-State would assume all executory contracts not identified for rejection, and because the expired lease was not identified, Wiekhorst inferred that the lease would be assumed. Wiekhorst stated it was filing an objection because

it believed that there was no lease to assume and that an order of confirmation would promote the holdover tenancy.

Wiekhorst sought relief from the automatic stay of the bankruptcy court and asked for a determination that the lease agreement for the billboard was terminated or had expired. The bankruptcy court entered an order on February 19, 2003, granting Wiekhorst relief from the automatic stay. The court found that there was no valid unexpired lease or executory contract between Western (Tri-State's predecessor) and Smith, because the lease between them had terminated or expired prior to the filing of the bankruptcy petition. Thus, the bankruptcy court made a finding that there was no valid unexpired lease or executory contract for Tri-State to assume or reject.

This court must give full faith and credit to judgments rendered by federal courts. See *Hayes v. Payne Investment Corporation*, 127 Neb. 24, 254 N.W. 684 (1934). See, also, *First Fed. Sav. & Loan Assn. v. Wyant*, 238 Neb. 741, 472 N.W.2d 386 (1991); *State Bank of Towner v. Edwards*, 484 N.W.2d 281 (N.D. 1992) (state court has no power to review decisions of federal court and is bound by related bankruptcy proceedings).

■ In addition, the finding that no lease existed between Tri-State and Wiekhorst cannot be relitigated under the doctrine of collateral estoppel. Four conditions must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001). In the case at bar, these conditions are satisfied.

First, the trial court determined that a de facto lease existed between the parties. However, the identical issue was previously determined by the bankruptcy court, which found that there was no valid unexpired lease between these parties.

Second, the bankruptcy court's finding as to the nonexistence of a lease was a final adjudication on the merits. This determination was included in an "Order Granting Relief From Automatic Stay" and in an "Order Sustaining Objection to Assumption of Alleged

Executory Contract." No further action was needed concerning whether there was a lease between the parties.

Tri-State and Wiekhorst were both parties in the bankruptcy court, which satisfies the third element of collateral estoppel. The fourth element requires that there was an opportunity to fully and fairly litigate the issue in the prior action. Wiekhorst and Tri-State were both represented before the bankruptcy court.

The determination of whether a lease existed between Tri-State and Wiekhorst had previously been decided, and that issue could not be relitigated in this action. See *Billingsley v. BFM Liquor Mgmt.*, 264 Neb. 56, 645 N.W.2d 791 (2002). We conclude that the trial court erred in determining that a de facto lease existed between the parties.

Since there was no valid unexpired lease for Tri-State to assume and no lease existed between Wiekhorst and Tri-State, we examine what rights Tri-State has in the billboard.

Tri-State's rights are based upon the rights of its predecessor, Western. The lease between Western and Smith provided that Western would pay $1 per year to Smith to rent space on the property for the billboard. The lease was entered into in 1985 for a 5-year term, and it was renewed in 1991 for an additional 5-year term. The record does not support a finding that the lease was renewed at the end of the second 5-year period. Thus, when Western sold its assets to Tri-State in 1997 or 1998, no lease existed between Western and Smith.

The bankruptcy court determined that there existed no valid unexpired lease between Western and Smith and that, therefore, there was no valid unexpired lease for Tri-State to assume. The lease provided that Western could remove the billboard "at any time during the term of this lease or any extension thereof, or within a reasonable time after the expiration of this lease or any extension thereof." Western did not remove the billboard during the lease or within a reasonable time after its expiration.

The trial court noted that Tri-State obviously kept the billboard in place after the lease expired because it was collecting advertising fees without having to pay rent to the landowner. Until Wiekhorst purchased the property in July 2002 and attempted to buy the billboard, Tri-State was content to collect advertising fees without making any rental payments. As the trial court stated,

"After having feasted on the collection of advertising fees on a rent free basis between 1998 and July 2002, it seems manifestly unfair and unreasonable to now allow the defendant to invoke a right of removal clause . . . ."

In the absence of an agreement, the right of a tenant to remove a fixture from real property must be exercised during the term of the lease. *Free v. Stuart*, 39 Neb. 220, 57 N.W. 991 (1894). If the tenant leaves the premises without removing the fixtures and the landlord takes possession, the fixtures become the property of the landlord. *Id.* See, also, *Stevens v. Burnham*, 62 Neb. 672, 87 N.W. 546 (1901) (right of tenant, or of those claiming through or under him, to remove trade or agricultural fixture from leased premises, expires with tenancy); *Friedlander v. Ryder*, 30 Neb. 783, 47 N.W. 83 (1890).

Other courts have held similarly. In *Smith v. United States*, 113 F.2d 191, 193 (10th Cir. 1940), the court held that "[w]here a lessee is given the right to remove fixtures, he must exercise that right within a reasonable time. When the lessee fails to remove the fixtures within a reasonable time he loses his right thereto." See, also, *Wilson v. Davis*, 202 Ark. 827, 153 S.W.2d 171 (1941); *Wadman v. Burke*, 147 Cal. 351, 81 P. 1012 (1905); *Mullins v. Sturgill*, 192 Va. 653, 66 S.E.2d 483 (1951); *Bernard v. Crosby*, 121 Wash. 257, 209 P. 524 (1922).

In the case at bar, ownership of the billboard is determined by the lease agreement. The lease provided:

[A]ll signs . . . placed on the demised premises by Lessee shall at all times be and remain the personal property of Lessee, subject to removal by the Lessee at any time during the term of this lease or any extension thereof, or within a reasonable time after the expiration of this lease or any extension thereof.

Thus, the lease granted Western the right to remove the billboard at the expiration of the lease or within a reasonable time thereafter. This right did not transfer to Tri-State when it purchased Western's assets, because there was no valid unexpired lease.

Wiekhorst cites as authority *Adams Outdoor Adv. Ltd. Part. v. Long*, 253 Va. 206, 483 S.E.2d 224 (1997). In that case, a billboard was erected more than 65 years earlier by Consolvo & Cheshire, an advertising agency. The lease provided that all billboards were

the property of the lessee and that the lessee could remove the billboards upon termination of the lease. Subsequent leases between successor landowners and different lessees stated that " 'signs, structures and equipment' " erected by the lessee were the property of the lessee and could be removed by the lessee. *Id.* at 208, 483 S.E.2d at 226.

In 1993, the landowner, Robert E. Long, notified Adams Outdoor Advertising Limited Partnership (Adams) that the lease for a billboard was being terminated. Adams accepted the cancellation and notified Long that it would schedule demolition of the billboard. Long filed an action to enjoin Adams from demolishing the billboard because Long wanted to use the billboard to advertise his own business. The trial court held that Long, as the landowner, owned the billboard, and the Virginia Supreme Court affirmed that holding.

Because the billboard was permanently affixed to the land, the appellate court held that the billboard's character was determined by the agreement between the parties, if one existed. "Whether such a structure remains personalty, owned by the person who erected the structure, or becomes part of the realty, and thus owned by the landowner, is determined . . . by an agreement establishing the nature and ownership of the structure . . . ." *Id.*

The court stated:

> When tenants retain ownership of structures they erect on property and are allowed to remove the structures, the removal generally must occur within a reasonable period after the end of the tenancy. If the structure is not removed, it becomes the property of the landlord because it is affixed to the land. 1 Raleigh C. Minor, *The Law of Real Property* § 37 (Frederick D.G. Ribble ed., 1928).

253 Va. at 209, 483 S.E.2d at 226.

Consolvo & Cheshire had constructed the billboard and did not remove it at the conclusion of its tenancy or within a reasonable time thereafter. "Consequently, the billboard, which was permanently affixed to the land, became part of the realty and the property of the landowner. When Long acquired the land, he acquired the billboard as part of the land purchased." *Id.* at 209, 483 S.E.2d at 227. The court stated that the entry of a former tenant onto the land to remove the structure would itself constitute

a trespass, citing 2 Thompson on Real Property § 13.05(c) (David A. Thomas 2d ed. 1994).

In the case at bar, Western entered into a lease agreement with Smith in 1985, and Western leased the property from Smith until 1996. Western did not remove the billboard within a reasonable time after termination of the lease. The billboard then became part of the realty and belonged to Smith, who subsequently sold the property and the billboard to Wiekhorst.

When Tri-State purchased Western's assets, including certain leases, it did not acquire a lease for the billboard because Western had no interest in the billboard after the expiration of its lease with Smith. Thus, Tri-State had no interest in the billboard. Tri-State did not attempt to renew the lease with Smith. Instead, Tri-State elected to continue collecting advertising fees without compensating or accounting to the landowner. It did not operate as if it had a de facto lease with Wiekhorst because it paid nothing to Wiekhorst, even though it was collecting advertising fees. Tri-State subsequently refused to compensate Wiekhorst for use of the property.

We further note that this court has held, "Whether articles constructed upon realty owned by another become annexed to and part of the realty depends to a great extent upon the facts and circumstances of the particular case." *Fuel Exploration, Inc. v. Novotny*, 221 Neb. 17, 23, 374 N.W.2d 838, 842 (1985). In the case at bar, Smith testified that he believed he was selling the property and the billboard to Wiekhorst because Smith owned the property and he believed Tri-State had abandoned the billboard by discontinuing rent payments. The billboard became a part of the realty upon termination of the lease and the failure of Western to remove the billboard within a reasonable time thereafter. It became the property of Smith, who subsequently sold it to Wiekhorst.

If a court of equity has properly acquired jurisdiction of a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation. *State ex rel. Cherry v. Burns*, 258 Neb. 216, 602 N.W.2d 477 (1999). We agree with the trial court's finding that the billboard had not been removed within a reasonable time after expiration of the lease. However, the court erred in holding that a de

facto lease existed and that the billboard belonged to Tri-State. The court also erred in directing that Tri-State retain use of the billboard for advertising purposes until 2007.

Upon remand, we direct the trial court to order Tri-State to account to Wiekhorst for the net profits from advertising fees received by Tri-State from the date Wiekhorst purchased the real estate to the present, less any administrative fee paid to Wiekhorst as ordered by the bankruptcy court.

## CONCLUSION

The judgment of the district court is reversed, and the cause is remanded with directions to enter judgment consistent with this opinion. There is no merit to the remaining issues in Tri-State's cross-appeal, and it is dismissed.

REVERSED AND REMANDED WITH DIRECTIONS.

McCORMACK, J., not participating.