Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/27/2022 08:07 AM CDT

Lanny Schmid, an individual, appellee and
cross-appellee, v. Lee Simmons, an individual, and
Niobrara River Ranch, L.L.C., a Nebraska limited
liability company, appellants, MAR14, LLC,
a Nebraska limited liability company,
appellee and cross-appellant,
and Thomas Masters, an
individual, appellee.

___ N.W.2d ___

Filed March 4, 2022.     No. S-20-524.

1. **Trial: Equity: Appeal and Error.** On appeal from the bench trial of an equity action, the standard of review is de novo on the record and the court must resolve questions of law and fact independently of the trial court's determinations. When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

2. **Constitutional Law: Appeal and Error.** The review of constitutional standards is a question of law and is reviewed independently of the trial court's determination.

3. **Motions for New Trial: Judges: Words and Phrases: Appeal and Error.** An appellate court reviews the denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Constitutional Law: Jury Trials: Equity.** Article I, § 6, of the Nebraska Constitution preserves the right to a jury trial as it existed under the common law when the Nebraska Constitution was adopted in 1875. At

common law, legal claims were tried by a jury and equitable claims were tried by a court.

5. **Claims: Jury Trials: Equity.** In Nebraska, it is well established that litigants are typically entitled to a jury trial on legal claims, but not equitable claims.

6. **Constitutional Law: Statutes: Actions: Jury Trials: Equity.** Pursuant to the Nebraska Constitution and statutes, the courts have traditionally denied jury trials in equitable actions and provided them as a matter of right in legal actions.

7. **Actions: Pleadings: Equity.** The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations of the petition determine whether a particular action is one at law to be tried to a jury or in equity to be tried to a court.

8. ____: ____: ____. The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. This determination is unaffected by the conclusions of the pleader or whether or not the pleader denominates the case as one at law or in equity.

9. **Jurisdiction: Equity.** If a court of equity has properly acquired jurisdiction of a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation.

10. **Actions: Jury Trials: Equity.** Under the equitable cleanup doctrine, when a cause of action for equitable relief is stated, and when the plaintiff prays for equitable relief, a jury trial cannot be demanded as a matter of right by the defendant. This is true even if the defendant pleads legal defenses or files a counterclaim for damages in response to the plaintiff's equitable cause of action.

11. **Constitutional Law: Jury Trials: Equity.** Neb. Const. art. I, § 6, preserves the right to a jury trial as it existed under the common law when the Nebraska Constitution was adopted. It does not create or extend such right. At common law, litigants did not have a right to a jury trial in equitable actions.

12. ____: ____: ____. It does not offend the Nebraska Constitution to deny a jury trial when the main object of a civil action is equitable, even when a defendant raises legal counterclaims in response to the plaintiff's equitable action.

13. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

14. **Actions: Pleadings: Notice.** Nebraska is a notice pleading jurisdiction, and civil actions are controlled by a liberal pleading regime. A party is required to set forth only a short and plain statement of the claim showing the pleader's entitlement to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted. The rationale for this liberal notice pleading standard is that when a party has a valid claim, he or she should recover on it regardless of a failure to perceive the true basis of the claim at the pleading stage.

15. **Rules of the Supreme Court: Trial: Pleadings: Implied Consent.** To determine whether an issue was tried by the express or implied consent of the parties under Neb. Ct. R. Pldg. § 6-1115(b), the key inquiry is whether the parties recognized that an issue not presented by the pleadings entered the case at trial.

16. ____: ____: ____: ____. Implied consent for purposes of Neb. Ct. R. Pldg. § 6-1115(b) may arise in two situations: First, the claim may be introduced outside of the complaint—in another pleading or document— and then treated by the opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue.

17. ____: ____: ____: ____. For purposes of Neb. Ct. R. Pldg. § 6-1115(b), implied consent may not be found if the opposing party did not recognize that new matters were at issue during the trial. A court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim.

18. **Corporations: Courts: Judgments.** Neb. Rev. Stat. § 21-147(b) (Cum. Supp. 2020) affords a court discretion to order a remedy other than dissolution, but it does not require the court to exercise that discretion.

Appeal from the District Court for Cherry County: MARK D. KOZISEK, Judge. Affirmed.

Bartholomew L. McLeay and Dwyer Arce, of Kutak Rock, L.L.P., for appellants.

Michael C. Cox, John V. Matson, Quinn R. Eaton, and Cassandra M. Langstaff, of Koley Jessen, P.C., L.L.O., for appellee Lanny Schmid.

Eric A. Scott for appellee MAR14, LLC.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Weimer, District Judge.

Stacy, J.

This appeal arises from a dispute involving a limited liability company (LLC) and its members. After a bench trial, the district court entered a judgment which ordered an accounting, declared the membership rights of the parties, quieted title to certain real estate, and established a resulting trust; all other requested relief was denied. One member of the LLC appealed, assigning error to the district court's denial of a request for a jury trial on its legal counterclaims. The LLC cross-appealed, assigning error to the court's denial of a request to dissociate one of the members. Finding no merit to the assigned errors, we affirm.

## I. BACKGROUND

In 2014, Lanny Schmid and Lee Simmons pooled their money with others to bid on certain tracts of land being sold at public auction, including 560 acres near Valentine, Nebraska, which the parties refer to as the "Canyon Rim" land. The collective bid was successful. Only the Canyon Rim tract is relevant to this appeal.

Schmid did not attend the closing for the Canyon Rim land, but on the day of closing, he transferred $600,000 to an account operated by Niobrara River Ranch, L.L.C. (NRR). NRR is a trade name that Simmons uses for some of his business ventures, and the account into which Schmid transferred the funds is owned and controlled by Simmons. The reason for Schmid's transfer is disputed, but it appears Simmons used the $600,000, along with other funds, to close on the land acquired by the parties. The deed to the Canyon Rim land was titled in the name "MAR14, LLC" (MAR14).

MAR14 is a member-managed limited liability company, and its only members are Simmons, Schmid, and Thomas Masters. Its operating agreement states that "this Company is formed to purchase land, transfer it and manage it." The

operating agreement requires unanimous consent of all members for certain matters, including property transfers. The record shows that Simmons initially created MAR14 to take title to another tract of land and to serve as a tax-planning vehicle for other properties.

After closing on the Canyon Rim land, Simmons and Schmid considered building cabins on the property, subdividing the property, and selling the property. But roughly 2 years after acquiring the land, the parties' communications regarding the Canyon Rim land stalled.

In May 2016, Schmid sent Simmons an email proposing that they divide ownership of the Canyon Rim land. Schmid suggested that 320 acres of the Canyon Rim land be titled in his name and that the remaining 240 acres be titled in Simmons' name. Simmons did not accept the proposal. About 2 months later, in July 2016, Schmid sent Simmons a demand letter requesting, among other things, a full accounting of MAR14's activities, an accounting of his $600,000 transfer, and an explanation for why title to certain property was transferred from MAR14 to another entity without unanimous approval from all MAR14 members. Simmons' attorney responded to this letter, but no resolution was reached.

## 1. Lawsuit

Shortly thereafter, Schmid filed a lawsuit against Simmons, MAR14, and NRR in the district court for Cherry County, Nebraska. In an amended complaint, Schmid added the third member of MAR14, Masters, as a defendant. Schmid's operative amended complaint sought (1) to quiet title to a specific parcel of land acquired in the auction and to eject Simmons from the parcel, (2) a declaratory judgment determining the MAR14 members' percentage of ownership, (3) an accounting from MAR14, (4) judicial dissolution of MAR14, and (5) any other relief the court deemed just and equitable.

Simmons and NRR filed a joint answer, generally denying that Schmid was entitled to the relief sought and disputing the nature of Schmid's $600,000 transfer. Their answer also

alleged several counterclaims, including claims for (1) a resulting trust, (2) a decree quieting title, and (3) an accounting/action for assumpsit.

MAR14 filed its own answer to Schmid's operative complaint and generally denied that Schmid was entitled to have MAR14 judicially dissolved. MAR14 also counterclaimed, seeking a "judicial determination and declaration concerning" Schmid's membership status in MAR14, costs of its action, and other equitable relief. Masters filed an answer in which he denied making any capital contribution to MAR14 and disclaimed any interest in the real estate held by MAR14.

### 2. TELEPHONIC PROGRESSION CONFERENCE

In February 2017, the presiding judge held a telephonic conference with the parties' counsel. The bill of exceptions does not include that conference, but our transcript includes a signed and file-stamped progression order which memorialized the conference. The progression order states the conference occurred in "Judge's chambers at Ainsworth, Nebraska, by telephone conference call" and also states, "The parties agreed the matter was equitable and would be tried to the court without a jury."

### 3. SIMMONS AND NRR AMEND ANSWER TO ADD COUNTERCLAIM AND MAKE JURY DEMAND

In December 2017, Simmons and NRR amended their answer to include a counterclaim for "Breach of Contract/Estoppel." The counterclaim sought to recover lost profits and demanded a jury trial on "any and all issues or claims triable by right under the Nebraska Constitution or Nebraska statutes."

Schmid moved to strike the jury demand from the amended answer, and the court granted that motion. In addition to noting that the parties agreed, during the progression conference, that the matter was equitable in nature and would be tried to the court, the court's order stated that Simmons, Masters, MAR14, and NRR were not entitled to a jury trial.

It relied on *Kuhlman v. Cargile*[1] for the proposition that "when a court of equity acquires jurisdiction over a cause for any purpose it may retain the cause for all purposes and proceed to a final determination on all matters put in issue in the case." This rule is sometimes referred to as the "equitable clean-up" doctrine.[2]

The court subsequently issued a final pretrial order which stated that "the pleadings adequately state the issues to be tried," and it confirmed that "[t]he matter shall be tried to the court without a jury." Simmons and NRR objected to that portion of the pretrial order which required a trial to the bench on their legal counterclaims, but the court overruled the objection and declined to reconsider its prior ruling. Simmons and NRR renewed their jury demand at the start of the bench trial, and the court again overruled their objection.

During the 4-day bench trial, the parties adduced evidence on all disputed issues. We summarize only that evidence which is pertinent to the assignments of error on appeal.

Schmid testified that he was a financial member of MAR14 and that his $600,000 transfer was a capital contribution to the LLC. Schmid believed MAR14's purpose was to acquire and manage agricultural land. Schmid testified that MAR14 refused to provide him an accounting of revenues and expenses and denied his right to authorize transfers, receive revenue, and participate in its operation and management. Schmid wanted MAR14 to be judicially dissolved because he and Simmons were unable to agree on the membership status of the MAR14 members, the percentage of ownership of any member, the distributions to be made, or how to conduct the business and operations of MAR14. According to Schmid, MAR14 was "hopelessly deadlocked" and it was "not reasonably practical to carry on MAR14's activities in conformity with the certificate of organization of MAR14 and the operating agreement."

---

[1] *Kuhlman v. Cargile*, 200 Neb. 150, 156, 262 N.W.2d 454, 458 (1978).

[2] See John P. Lenich, Nebraska Civil Procedure §§ 29:9 and 29:10 (2021). See, also, 27A Am. Jur. 2d *Equity* § 103 (2019).

Simmons testified that he was MAR14's only "financial" member. He described Schmid's $600,000 transfer to MAR14 as an investment in Canyon Rim and the parties' collective plans for that land, rather than a capital contribution to MAR14. He also testified that after making initial capital contributions, neither Schmid nor Masters contributed additional capital to MAR14. Simmons testified that he formed MAR14 to facilitate certain property exchanges, and he believed Schmid was hindering that purpose.

During closing argument, Schmid's attorney urged the court to judicially dissolve MAR14. The attorney also suggested to the court that it had discretion to pursue other equitable alternatives if it deemed dissolution inappropriate, but Schmid did not ask the court to dissociate any member from MAR14.

When presenting closing arguments on behalf of Simmons and NRR, counsel expressly asked the court, for the first time, to consider using its equitable powers and authority under Neb. Rev. Stat. § 21-147(b) (Cum. Supp. 2020) to dissociate Schmid from MAR14. Later, MAR14 submitted a posttrial brief in which it asked, for the first time, to have Schmid dissociated. This brief is not in our appellate record.

### 4. Judgment

On May 27, 2020, the district court entered judgment denying Schmid's claims for quiet title and ejectment, but granting Schmid's claims for an accounting and declaratory judgment. After determining that Schmid intended his $600,000 to be used to purchase the Canyon Rim land, the court declared Schmid to be the owner of an undivided 53.57 percent interest in the Canyon Rim land. It ordered MAR14 to convey that undivided interest to Schmid. The court effectively denied Schmid's dissolution claim, reasoning that its resolution of the other issues "removes the necessity of dissolving [MAR14]."

The court granted Simmons and NRR's request for a resulting trust and to quiet title to certain land, but it denied their counterclaims for an accounting, assumpsit, reimbursement,

and breach of contract/estoppel. On MAR14's counterclaim for declaratory judgment regarding Schmid's membership status, the court found that "Schmid is not a financial/economic member" of MAR14. The court's judgment did not expressly rule on the requests made during closing argument to dissociate Schmid from MAR14, but it did state that "[a]ny other claims for relief by any party, expressed or implied, are denied and dismissed with prejudice."

### 5. Motion to Alter or Amend

MAR14 filed a timely motion to alter or amend the judgment, asking the district court to expressly rule on, and grant, its request to dissociate Schmid from MAR14. The court overruled MAR14's motion, reasoning the request to dissociate was not properly before the court, because it was not presented in the pleadings, and instead was raised for the first time in closing argument.

Simmons and NRR filed this timely appeal, and MAR14 cross-appealed. Simmons and NRR challenge the denial of a jury trial on their legal counterclaims. Among other things, they argue that the equitable cleanup doctrine, relied upon by the trial court to deny their jury demand, has been abrogated in Nebraska. Alternatively, they argue the doctrine should be abandoned. We granted bypass to consider the continued viability of the equitable cleanup doctrine in Nebraska.

### II. ASSIGNMENTS OF ERROR

Simmons and NRR assign that the district court erred in denying their demand for a jury trial on their legal counterclaims.

On cross-appeal, MAR14 assigns that the district court erred in failing to "rule on Schmid's [membership] status . . . and order Schmid's dissociation" from MAR14. For the sake of completeness, we note that MAR14 also assigned error to the court's refusal to cancel a lis pendens filed on MAR14's property, but it has since abandoned that assignment, so this opinion will not further address it.

## III. STANDARD OF REVIEW

[1] On appeal from the bench trial of an equity action, the standard of review is de novo on the record and the court must resolve questions of law and fact independently of the trial court's determinations.[3] When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[4]

[2] The review of constitutional standards is a question of law and is reviewed independently of the trial court's determination.[5]

[3] An appellate court reviews the denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion.[6] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[7]

## IV. ANALYSIS

On appeal, Simmons and NRR contend they were entitled to a jury trial on their legal counterclaims and the district court erred in denying them that right. They argue the court erroneously relied on the equitable cleanup doctrine, which they contend was effectively abrogated by our analysis in *Jacobson v. Shresta*.[8] Alternatively, they urge this court to abandon the doctrine now. We begin our analysis of these arguments by reviewing Nebraska law pertaining to the right to a jury trial in civil cases.

---

[3] *Benjamin v. Bierman*, 305 Neb. 879, 943 N.W.2d 283 (2020).

[4] *Id.*

[5] *In re Interest of Zoie H.*, 304 Neb. 868, 937 N.W.2d 801 (2020).

[6] *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

[7] *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

[8] *Jacobson v. Shresta*, 288 Neb. 615, 849 N.W.2d 515 (2014).

### 1. CIVIL RIGHT TO JURY TRIAL AND
### EQUITABLE CLEANUP DOCTRINE

In their appellate briefing, Simmons and NRR focus on the right to a civil jury trial as guaranteed by the Nebraska Constitution. We limit our analysis accordingly.

[4] Article I, § 6, of the Nebraska Constitution provides:

> The right of trial by jury shall remain inviolate, but the Legislature may authorize trial by a jury of a less number than twelve in courts inferior to the District Court, and may by general law authorize a verdict in civil cases in any court by not less than five-sixths of the jury.

We have long held that this constitutional provision preserves the right to a jury trial as it existed under the common law when the Nebraska Constitution was adopted in 1875.[9] At common law, legal claims were tried by a jury and equitable claims were tried by a court.[10]

[5-8] Under Nebraska statute, "[i]ssues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury unless a jury trial is waived . . . ."[11] Thus, in Nebraska, it is well established that litigants are typically entitled to a jury trial on legal claims, but not equitable claims.[12] As we have explained:

> Pursuant to the Nebraska Constitution and statutes, this court has traditionally denied jury trials in equitable actions and provided them as a matter of right in legal actions. . . .
>
> The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations

---

[9] *Id.*

[10] *Id.*

[11] Neb. Rev. Stat. § 25-1104 (Reissue 2016).

[12] See *State ex rel. Cherry v. Burns*, 258 Neb. 216, 602 N.W.2d 477 (1999). See, also, *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

of the petition determine whether a particular action is one at law to be tried to a jury or in equity to be tried to a court. . . . The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. This determination is unaffected by the conclusions of the pleader or whether or not the pleader denominates the case as one at law or in equity.[13]

[9] Moreover, we have consistently held that if a court of equity has properly acquired jurisdiction of a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation.[14] The historical roots and purpose of the doctrine has been described by one commentator as follows:

The doctrine traces its roots to the days when there were separate equity and law courts. If an equity court acquired jurisdiction of a case because of a presence of an equitable claim, the court could adjudicate the entire case even though that might involve awarding legal relief. In other words, the equity court could grant any equitable relief that was warranted and could then clean-up the rest of the case by awarding any incidental legal relief that was warranted. The purpose of the doctrine was to avoid multiple litigation and to protect plaintiffs from being left without a remedy if they initially chose the wrong court.[15]

[10] Even after separate equity courts and law courts merged, Nebraska has consistently applied the equitable cleanup doctrine.[16] Relying on the doctrine, we have long

---

[13] *State ex rel. Cherry, supra* note 12, 258 Neb. at 223-24, 602 N.W.2d at 482-83 (citations omitted).

[14] *State ex rel. Cherry, supra* note 12.

[15] See Lenich, *supra* note 2, § 29:9 at 1232.

[16] Lenich, *supra* note 2.

said that when a cause of action for equitable relief is stated, and when the plaintiff prays for equitable relief, a jury trial cannot be demanded as a matter of right by the defendant.[17] This is true even if the defendant pleads legal defenses or files a counterclaim for damages in response to the plaintiff's equitable cause of action.[18]

Here, the district court relied on the above principles to find that Simmons and NRR were not entitled to a jury trial on their "Breach of Contract/Estoppel" claim. On this record, we find no error with this determination.

The pleadings and relief sought by the parties reveal that this action was primarily equitable in nature. The parties do not dispute that Schmid's claims sounded in equity,[19] as did most of Simmons and NRR's counterclaims.[20] Simmons and NRR argue they raised legal counterclaims in their operative amended answer,[21] but we do not understand them to dispute that the "main object"[22] of this action was equitable. Thus,

---

[17] *Kuhlman, supra* note 1.

[18] *Id.*

[19] See, *Burnett v. Maddocks*, 294 Neb. 152, 881 N.W.2d 185 (2016) (recognizing action to quiet title sounds in equity); *Robertson v. Jacobs Cattle Co.*, 285 Neb. 859, 830 N.W.2d 191 (2013) (action for partnership dissolution and accounting sounds in equity); *Detter v. Miracle Hills Animal Hosp.*, 269 Neb. 164, 691 N.W.2d 107 (2005) (action for corporate dissolution sounds in equity); *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 772, 523 N.W.2d 364, 368 (1994) (explaining that whether to treat declaratory judgment action as one in law or equity depends on nature of dispute and that accounting can be an equitable remedy when action involves "a complicated series of accounts").

[20] See, *Burnett, supra* note 19 (quiet title action sounds in equity); *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994) (actions to impose resulting trust sound in equity).

[21] See, *Goes v. Vogler*, 304 Neb. 848, 937 N.W.2d 190 (2020) (action for breach of contract is action at law); *Kissinger v. Genetic Eval. Ctr.*, 260 Neb. 431, 618 N.W.2d 429 (2000) (assumpsit is action at law).

[22] *State ex rel. Cherry, supra* note 12, 258 Neb. at 223, 602 N.W.2d at 482.

because the district court properly acquired equitable jurisdiction over the suit, Simmons and NRR were not entitled to demand a jury trial on their legal counterclaims as a matter of right. Under the equitable cleanup doctrine, the district court was permitted to make complete adjudication of all matters properly presented to it and to grant either legal or equitable relief.[23]

## 2. HAS EQUITABLE CLEANUP DOCTRINE BEEN ABROGATED?

Simmons and NRR's primary argument on appeal is that the equitable cleanup doctrine was abrogated by this court in *Jacobson v. Shresta*[24] and that thus, the district court should not have relied on it. *Jacobson* involved a medical malpractice suit, and the issue was whether the plaintiff waived the right to jury trial "by failing to object to a defendant's motion for a bench trial before the court sustain[ed] the motion."[25] The appeal was originally docketed with the Nebraska Court of Appeals, which held that under such circumstances, there was a valid jury waiver. But we disagreed on further review, explaining that jury waivers are "statutorily governed by § 25-1126."[26] Neb. Rev. Stat. § 25-1126 (Cum. Supp. 2020) provides:

> The trial by jury may be waived by the parties in actions arising on contract and with assent of the court in other actions (1) by the consent of the party appearing, when the other party fails to appear at the trial by himself or herself or by attorney, (2) by written consent, in person or by attorney, filed with the clerk, and (3) by oral consent in open court entered upon the record.

---

[23] *State ex rel. Cherry, supra* note 12.

[24] *Jacobson, supra* note 8.

[25] *Id.* at 620, 849 N.W.2d at 519.

[26] *Id.* at 623, 849 N.W.2d at 521.

*Jacobson* explained that "unless a party's conduct falls into one of § 25-1126's three categories, we will not find a waiver of a constitutional right."[27]

Thus, *Jacobson* clarified the circumstances under which a court can find that a party has validly waived the right to a jury trial. But *Jacobson* has no bearing on the applicability of the equitable cleanup doctrine. It is axiomatic that a party must be entitled to a jury trial before they can validly waive that right. And as we have already explained, it is well established in Nebraska that when a cause of action for equitable relief is stated, and when the plaintiff prays for equitable relief, a jury trial *cannot be demanded as a matter of right* by the defendant, even when the defendant raises legal counterclaims or defenses in response to the plaintiff's equitable cause of action.[28] Nothing in *Jacobson* purports to alter the applicability of the equitable cleanup doctrine, and we expressly reject Simmons and NRR's suggestion that *Jacobson* abrogated the doctrine.

### 3. Should Doctrine Be Abandoned?

Alternatively, Simmons and NRR argue that even if *Jacobson* did not abrogate the equitable cleanup doctrine, this court should nevertheless abandon the doctrine. They suggest that the doctrine is either unconstitutional or "serves no purpose in Nebraska today."[29]

[11,12] As an initial matter, we reject Simmons and NRR's suggestion that the doctrine is unconstitutional. As already explained, Neb. Const. art. I, § 6, preserves the right to a jury trial as it existed under the common law when the Nebraska Constitution was adopted.[30] It does not create or extend

---

[27] *Id.*

[28] *Kuhlman, supra* note 1.

[29] Brief for appellants at 29.

[30] *Jacobson, supra* note 8.

such right.[31] At common law, litigants did not have a right to a jury trial in equitable actions.[32] And as already explained, it is a basic and long-established principle of Nebraska's equity jurisprudence that where a court of equity has properly acquired jurisdiction in a suit for equitable relief, it will make a complete adjudication of all matters properly presented and involved in the case and ordinarily will grant such relief, legal or equitable, as may be required and thus avoid unnecessary litigation.[33] Thus, it does not offend the Nebraska Constitution to deny a jury trial when the main object of a civil action is equitable, even when a defendant raises legal counterclaims in response to the plaintiff's equitable action.[34]

We also disagree with Simmons and NRR's suggestion that the equitable cleanup doctrine serves no purpose in Nebraska today. The primary purpose of the doctrine is to promote judicial efficiency in adjudicating cases, by allowing courts tasked with adjudicating actions which are primarily equitable in nature to hear and resolve all claims presented in those actions.[35] Simmons and NRR have not suggested the doctrine can no longer achieve this purpose, and they have offered no principled reason to abrogate a doctrine which we have followed for more than a century.

---

[31] *Sharmer v. Johnson*, 43 Neb. 509, 61 N.W. 727 (1895).

[32] See, *Jacobson, supra* note 8; *Sharmer, supra* note 31. See, also, *Krumm v. Pillard*, 104 Neb. 335, 338-39, 177 N.W. 171, 172 (1920) ("[w]hen the action is one purely legal in its nature, the rule is that either party ordinarily, as a matter of right, is entitled to demand a jury trial. . . . When the cause is for equitable relief, a jury cannot be demanded as a matter of right by either party to try any issue arising in the case"); *State v. Moores*, 56 Neb. 1, 8, 76 N.W. 530, 532 (1898) ("[t]he right of trial by jury, at common law, never existed in equitable proceedings").

[33] *Sechovec v. Harms*, 187 Neb. 70, 187 N.W.2d 296 (1971).

[34] See *Kuhlman, supra* note 1.

[35] See *State ex rel. Cherry, supra* note 12.

We are aware that some states have chosen to limit or abandon similar doctrines.[36] Here, however, Simons and NRR have not presented any compelling reason to abandon or modify the doctrine's application in Nebraska.

The equitable cleanup doctrine is still good law in Nebraska, and the district court did not err in relying on it to deny Simmons and NRR's jury demand on their legal counterclaims. Simmons and NRR's lone assignment of error is meritless.

### 4. WAIVER OF JURY

[13] For the sake of completeness, we note that the parties devote substantial briefing to whether Simmons and NRR validly waived the right to a jury trial under § 25-1126 at the February 2017 telephonic conference. Because we have concluded that Simmons and NRR were not entitled to a jury trial on their legal counterclaims in the first instance, we need not reach the issue of whether they validly waived a jury under one of the enumerated methods in § 25-1126. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[37]

### 5. CROSS-APPEAL

On cross-appeal, MAR14 assigns error to the district court's "fail[ure] to rule on Schmid's [membership] status . . . and order Schmid's dissociation" from MAR14. As explained below, we find this assignment of error to be without merit.

We begin by noting that as part of its assignment of error, MAR14 contends the court erred in failing to "rule on Schmid's [membership] status." But the record belies this

---

[36] See, e.g., *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 474 (Mo. 2004) (narrowing application of equitable cleanup doctrine, explaining that "[i]n some situations, the practical and efficient trial of a case may require limited incidental claims at law to be tried to the court in connection with equitable matters" but stating that "[t]rying incidental claims at law to the court . . . should be the exception and not the rule").

[37] *Gonzales v. Nebraska Pediatric Practice*, 308 Neb. 571, 955 N.W.2d 696 (2021).

contention. In its written judgment, the court ruled that Schmid is not a financial/economic member of MAR14. Thus, the court *did* issue a ruling on Schmid's membership status, and to the extent MAR14 suggests otherwise, it is mistaken.

The primary thrust of MAR14's cross-appeal is not that the court failed to rule on Schmid's membership status, but, rather, that it failed to order Schmid's dissociation from MAR14. MAR14 makes three arguments in support of this contention: (1) The court should have ruled on Schmid's dissociation, because MAR14 raised this issue in its pleadings; (2) even if it was not raised in the pleadings, the court should have ruled on Schmid's dissociation, because the parties tried the issue by consent; and (3) the court had authority under § 21-147(b) to order Schmid's dissociation and should have exercised that authority. We address each argument in turn.

(a) Was Dissociation Sufficiently Pled?

MAR14 contends the district court should have ruled on its request to dissociate Schmid, because this issue was raised in the pleadings. The record does not support this contention.

[14] Nebraska is a notice pleading jurisdiction, and civil actions are controlled by a liberal pleading regime.[38] A party is required to set forth only a short and plain statement of the claim showing the pleader's entitlement to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.[39] The rationale for this liberal notice pleading standard is that when a party has a valid claim, he or she should recover on it regardless of a failure to perceive the true basis of the claim at the pleading stage.[40]

---

[38] *Tryon v. City of North Platte*, 295 Neb. 706, 890 N.W.2d 784 (2017).

[39] *AVG Partners I, supra* note 6. See, also, *Haffke v. Signal 88*, 306 Neb. 625, 643, 947 N.W.2d 103, 117 (2020) ("the touchstone is whether fair notice was provided"); Neb. Ct. R. Pldg. § 6-1108.

[40] *Tryon, supra* note 38.

Even under Nebraska's liberal pleading regime, we cannot find the issue of Schmid's dissociation was raised in any of the pleadings in this case or in the court's pretrial order. No party requested that Schmid be dissociated from MAR14, nor did any party allege that Schmid engaged in any activities which would merit his dissociation from the LLC. And we reject as meritless MAR14's suggestion that by seeking a judicial declaration regarding Schmid's "membership status," it also placed Schmid's dissociation from MAR14 at issue.

(b) Was Dissociation Tried by Consent?

MAR14 next argues that even if the issue of Schmid's dissociation was not raised in the pleadings, the parties tried the issue by consent. Again, we disagree.

[15,16] Neb. Ct. R. Pldg. § 6-1115(b) provides that when issues not raised by the pleadings have been tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.[41] To determine whether an issue was tried by the express or implied consent of the parties under § 6-1115(b), the key inquiry is whether the parties recognized that an issue not presented by the pleadings entered the case at trial.[42] We have said that implied consent for purposes of § 6-1115(b) may arise in two situations:

> First, the claim may be introduced outside of the complaint—in another pleading or document—and then treated by the opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue.[43]

---

[41] See *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015).

[42] *Id.*

[43] *Id.* at 1028, 858 N.W.2d at 216, quoting *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006) (internal quotation marks omitted).

[17] Implied consent may not be found if the opposing party did not recognize that new matters were at issue during the trial.[44] A court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim.[45]

The record in this case does not support MAR14's argument that the issue of dissociation was tried by consent of the parties. Notably, the issue of Schmid's dissociation was raised for the first time during closing argument, after all parties had rested. We see nothing in the record suggesting that "during the trial," Schmid "acquiesce[d] or fail[ed] to object to the introduction of evidence that relates only to [the issue of Schmid's dissociation]."[46] While there was some testimony that the members of MAR14 were "hopelessly deadlocked" and that Schmid and Simmons did not see eye-to-eye on MAR14's operations, this evidence was relevant to Schmid's judicial dissolution claim. Thus, on this record, we cannot find that Schmid should have recognized that his dissociation from MAR14 was being placed at issue during trial. We reject MAR14's claim that the parties tried the issue of Schmid's dissociation by consent.

### (c) Dissociation Under § 21-147(b)

[18] Finally, MAR14 contends the court had authority under § 21-147(b) to dissociate Schmid from MAR14 and erred in refusing to exercise that authority. Section 21-147(b) provides, "In a proceeding brought under subdivision (a)(5) of this section, the court may order a remedy other than dissolution." This statutory language affords a court discretion to order a remedy other than dissolution, but it does not require the court to exercise that discretion. Nor was the court, under § 21-147(b), required to order dissociation of a member in the event it found dissolution to be inappropriate.

---

[44] *United Gen. Title Ins. Co., supra* note 41.

[45] *Id.*

[46] See *id.* at 1028, 858 N.W.2d at 216, quoting *Blinn, supra* note 43 (internal quotation marks omitted).

Thus, the question here is whether the district court abused its discretion in failing to order Schmid's dissociation from MAR14 as an alternative remedy to dissolution. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[47]

On this record, we cannot find the court abused its discretion in failing to dissociate Schmid from MAR14. The issue of dissociation was not mentioned by any party until closing arguments in the case, and MAR14's request for dissociation, raised only in a posttrial brief, does not even appear in our record. Even assuming that facts exist to support Schmid's dissociation—an issue on which we express no opinion—we cannot find the district court abused its discretion in failing to order dissociation as an alternative remedy to dissolution when this issue was not expressly litigated at trial. For the same reason, we cannot find the district court abused its discretion in failing to alter or amend the judgment to order Schmid's dissociation. MAR14's assignment of error is without merit.

V. CONCLUSION

For all of the reasons stated, we affirm.

AFFIRMED.

MILLER-LERMAN, J., not participating.

---

[47] *Dycus, supra* note 7.