THE STATE OF NEBRASKA EX REL. JOHN D. CHERRY, M.D., ET AL.,
RELATORS, v. JUDGE STEVEN D. BURNS, RESPONDENT.
602 N.W. 2d 477

Filed November 19, 1999.  No. S-99-043.

Don Stenberg, Attorney General, and Therese N. James for relators.

Gail S. Perry and Jarrod S. Boitnott, of Baylor, Evnen, Curtiss, Grimit & Witt, for respondent.

Patrick Ronald Russell, amicus curiae.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

John D. Cherry, M.D., and Randy Lienneman, P.A.C., in their individual and official capacities, and Reynold Maixner, M.D., deceased, in his official capacity only (the Relators), seek a writ of mandamus compelling the district judge for Lancaster

County, Judge Steven D. Burns (the Respondent), to grant a jury trial in an action brought against them by Patrick Ronald Russell. We granted leave to file this original action and previously issued an alternative writ of mandamus ordering the Respondent to vacate his order overruling the Relators' motion for jury trial or to appear and show cause why a peremptory writ commanding the Respondent to do so should not issue. The Respondent made such appearance and showing, and we deny a peremptory writ of mandamus.

## STATEMENT OF FACTS

On October 31, 1997, Russell, an inmate serving a life sentence at the Nebraska State Penitentiary, filed his third amended petition (petition) pro se in the district court for Lancaster County alleging several causes of action against the Relators and several other parties in both their individual and official capacities. Russell's claims generally pertained to an alleged pattern of denial of proper health care.

The Relators and the other defendants filed a demurrer to Russell's petition. On January 13, 1998, the Respondent sustained the demurrer in part by dismissing five of the six causes of action against all defendants and by dismissing the remaining cause of action against all defendants except the Relators. The Respondent held that the remaining cause of action, the first cause of action in the petition, liberally construed, stated an Eighth Amendment claim against the Relators brought pursuant to the federal civil rights statute, 42 U.S.C. § 1983 (1994 & Supp. III 1997). The Eighth Amendment prohibits cruel and unusual punishment.

In his sole remaining cause of action, Russell alleged deliberate indifference to his medical care by the Relators which violated his civil rights as guaranteed by the 8th and 14th Amendments. In his petition, Russell requested relief which he labeled as "Injunctive Relief," "Declaratory Judgement," and "Monetary Damages." For his injunctive relief and declaratory judgment requests, Russell sought, inter alia, rulings that the Relators had deliberately denied him proper medical care, had deliberately caused him permanent pain and injury, and had attempted to cause his death; an order directed to the Nebraska

Medical Board to take action with respect to the Relators' medical licenses; an order of the court releasing Russell from prison; a prohibition on placing Russell in the prison hospital without Russell's authorization or a court order; a mandate that further medical treatment of Russell must be pursuant to written directives; an order to the Nebraska State Patrol to initiate criminal investigations for charges against the Relators; and "[a]ny and all costs and relief this court deems just." For his "monetary damages request," Russell sought $50 million in punitive damages.

On July 30, 1998, the district court set the case for a bench trial on its equity docket to commence February 22, 1999. On November 17, 1998, the Relators filed an application for jury trial in the case. The Respondent heard arguments on the application for jury trial on December 4 and overruled the application on December 7.

The Relators filed a petition for mandamus with this court on December 28, 1998. On January 13, 1999, we issued an alternative writ of mandamus ordering the Respondent to "vacate and set aside his order of December 7, 1998, overruling relators' motion for jury trial or appear and show cause in this Court within fourteen (14) days hereof why a peremptory writ commanding respondent to so do should not issue." The Respondent appeared and has made a showing.

## ASSIGNMENT OF ERROR

The Relators contend that the district court erred in overruling their motion for jury trial. The Relators assert that they have a clear right to a jury trial and that mandamus is their only adequate remedy to secure that right.

## REQUIREMENTS FOR ISSUANCE OF WRIT OF MANDAMUS

Mandamus is an action at law and is an extraordinary remedy issued to compel performance of a purely ministerial act or duty imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and

(3) there is no other plain and adequate remedy available in the ordinary course of the law. *State ex rel. City of Alma v. Furnas Cty. Farms*, 257 Neb. 189, 595 N.W.2d 551 (1999); *State ex rel. Acme Rug Cleaner v. Likes*, 256 Neb. 34, 588 N.W.2d 783 (1999).

To warrant the issuance of a peremptory writ of mandamus to compel the performance of a legal duty to act, (1) the duty must be imposed by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty must be clear. *State ex rel. Tyler v. Douglas Cty. Dist. Ct.*, 254 Neb. 852, 580 N.W.2d 95 (1998). Mandamus is not available to control judicial discretion and will be issued only if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *Id.*

In a mandamus action, the relator has the burden of proof and must show clearly and conclusively that it is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *State ex rel. Acme Rug Cleaner, supra.*

## ANALYSIS

*Prior Case Law.*

In their petition for mandamus, the Relators ask that we issue a writ of mandamus compelling the Respondent to grant a jury trial in the underlying action. In two previous cases, this court has been asked to issue a writ of mandamus compelling a lower court to vacate an order denying a defendant a jury trial. *State ex rel. Simpson v. Vondrasek*, 203 Neb. 693, 279 N.W.2d 860 (1979); *State, ex rel. Garton v. Fulton*, 118 Neb. 400, 225 N.W. 28 (1929).

In *State, ex rel. Garton*, as described in *State ex rel. Simpson*, the relator, as defendant in the county court, demanded a trial by jury. The State resisted relator-defendant's demand, claiming that the controlling statute afforded the county court discretion to proceed without a jury in the case. Relator-defendant contended that the statute was unconstitutional in that it denied her of her right to a jury trial. We concluded that the action of the county court in refusing to designate a jury trial, if error, should not be remedied in a mandamus proceeding. Instead, we determined that the county court had jurisdiction to hear and decide the question of whether to grant a jury trial; that such decision

involved " 'judicial discretion,' " *id.* at 701, 279 N.W.2d at 865; and that if the county court erred in its decision, the relator-defendant had an adequate remedy after judgment was entered to proceed to review the county court's decision with respect to the jury issue by either appeal or proceedings in error.

In contrast to *State, ex rel. Garton, State ex rel. Simpson* involved a statute that granted either party the right to demand a trial by jury if such demand was made in writing on or before answer day. The issue between relator-defendant and respondent judge pertained to the determination of the correct and applicable date on or before which such demand must have been made after the case was transferred from small claims court to municipal court. We found the facts in *State ex rel. Simpson* distinguishable from *State, ex rel. Garton* in that the statute in *State, ex rel. Garton* gave the inferior court judicial discretion, whereas the statute in *State ex rel. Simpson* permitted no discretion and mandated a jury trial when demand was timely filed.

In *State ex rel. Simpson,* we recognized the general rule that a writ of mandamus will not issue to review the action of an inferior court where there is an adequate remedy at law and that the writ may not be used to usurp or take the place of a writ of error or an appeal. However, we found that where a specific duty is provided by statute, mandamus may be invoked to enforce it, and the party entitled to such relief will not be forced to pursue his or her remedy by circuitous and dilatory means. We therefore concluded that, under the facts in *State ex rel. Simpson* and in the interest of conserving further expenditure of time, expense, and effort, justice required the issuance of a writ of mandamus granting relator-defendant a jury trial.

Taking *State, ex rel. Garton* and *State ex rel. Simpson* together, we determine that a writ of mandamus ordering a lower court to grant a jury trial is appropriate when, in addition to the customary mandamus criteria noted above, under the facts of the case, (1) a jury trial is mandated and the inferior court has no discretion in the matter and (2) other remedies available at law, such as appeal of the trial court's ruling, are inadequate to serve justice.

*Instant Case: Claimed Right to Jury Trial.*

In order to issue a peremptory writ of mandamus in the instant case, we would need to conclude that the Relators have a clear legal right to trial by jury, that the Respondent has a clear legal duty to grant trial by jury in the underlying action, and that Relators have no other plain and adequate remedy. These requirements are conjunctive, and the absence of any one precludes issuance of the peremptory writ.

The Relators argue that they have a constitutional right to a trial by jury in the underlying § 1983 action guaranteed by Neb. Const. art. I, § 6, as well as the 7th and 14th Amendments to the U.S. Constitution. Because we have previously determined that the federal constitutional provision of the Seventh Amendment does not apply in Nebraska state courts, *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986), and the U.S. Supreme Court has held under the Seventh Amendment that a jury is not invariably required in a § 1983 action, *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999), a constitutional right to a jury trial in the underlying action, if any, must stem from the state constitution.

The sole remaining cause of action in Russell's underlying case against the Relators, liberally construed, is an Eighth Amendment claim brought in state court pursuant to the federal civil rights statute, § 1983, claiming a deliberate indifference to the provision of proper health care to Russell. See *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The U.S. Supreme Court recently held that the statutory language of § 1983 does not confer the right to a jury trial in a § 1983 action and that entitlement to a jury trial under federal constitutional law in a § 1983 action depends on the nature of the underlying action. *City of Monterey, supra.* As we read the U.S. Supreme Court's decision in *City of Monterey*, entitlement to a jury trial under § 1983 must be determined on the basis of either the federal or state constitutional law, depending on whether the case is filed in federal or state court. *Id.* Because the case in *City of Monterey* was filed in federal court, the U.S. Supreme Court looked to the federal jurisprudence under the

Seventh Amendment to the U.S. Constitution to determine whether the parties had a right to a jury trial in that case.

In *City of Monterey*, the Court noted that the case before it was a suit for just compensation for a taking and the relief sought was damages. Under the cases construing the Seventh Amendment, the *City of Monterey* Court concluded that an action for damages is an action at law requiring a trial to a jury. Under *City of Monterey*, whether or not a jury is required in a § 1983 action depends on the nature of the action as pled. In his concurring opinion, Justice Scalia observes that a § 1983 action seeking only equitable relief, even if sounding in tort, would under federal constitutional law "disentitle" the plaintiff to a jury. *City of Monterey*, 119 S. Ct. at 1647 n.1. Similar to the approach mandated in *City of Monterey*, in the instant case, we must look to article I, § 6, of the Nebraska Constitution and the Nebraska constitutional law on jury entitlement to determine whether the Relators have a clear right to trial by jury in the § 1983 case as pled and which was filed against them by Russell in the state district court.

■ The Nebraska Constitution provides that "[t]he right of trial by jury shall remain inviolate . . . ." Neb. Const. art. I, § 6. The purpose of this constitutional provision is to preserve the right to a jury trial as it existed at common law and under statutes in force when the Nebraska Constitution was adopted in 1875. *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986). Pursuant to the Nebraska Constitution and statutes, this court has traditionally denied jury trials in equitable actions and provided them as a matter of right in legal actions. *Id.*

■ The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations of the petition determine whether a particular action is one at law to be tried to a jury or in equity to be tried to a court. *Dillon Tire, Inc. v. Fifer*, 256 Neb. 147, 589 N.W.2d 137 (1999); *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995). The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. This determination is unaffected by the conclu-

sions of the pleader or whether or not the pleader denominates the case as one at law or in equity. *Dillon Tire, Inc., supra*; *Synacek, supra*. We have repeatedly concluded that if a court of equity has properly acquired jurisdiction of a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation. E.g., *Dillon Tire, Inc., supra*; *Synacek, supra*; *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994); *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988); *Ames v. Ames*, 75 Neb. 473, 106 N.W. 584 (1906).

A review of Russell's petition reveals that the essential character of his sole remaining cause of action is equitable in nature. In the first cause of action in his petition, Russell asserts that the actions of the Relators in their official and individual capacities constituted a denial of proper medical care in violation of his right to be free from cruel and unusual punishment. He alleges that Relator Maixner deliberately failed to provide proper medical treatment for certain medical conditions and that Relators Cherry and Lienneman "acted deliberately to deny [Russell] proper medical treatment." Because the object of this mandamus action is limited to the issue of jury entitlement, we make no comment regarding the propriety of suing the Relators in their official or individual capacities or both. See *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999). In his "Order Re: Demurrer to Third Amended Petition," the Respondent determined that Russell's first cause of action, liberally construed, stated an Eighth Amendment claim against the Relators under § 1983.

In a section of the petition entitled "Relief Sought," Russell makes various requests which, as noted above, he categorizes under the labels "Injunctive Relief," "Declaratory Judgement," and "Monetary Damages." Certain of those requests appear to pertain solely to the causes of action that were dismissed. Those that pertain to the remaining Eighth Amendment claim include the following:

A) INJUNCTIVE RELIEF . . . :

1. Rule each of the respondants [sic] deliberately denied petitioner proper medical care for serious life threating [sic] conditions . . . .

. . . .

3. Rule each of the respondants [sic] deliberately caused petitioner permanent pais [sic], injury and has attempted to cause petitioners death.

. . . .

B) DECLARATORY JUDGEMENT . . . :

1. Order the Nebraska Medical Board to take action against the medical license of respondant [sic] Cherry; respondant [sic] Lienenmann [sic] and respondant [sic] Maxiner [sic].

2. Order the release of the petitioner from the custody of the respondants [sic] pursuant to the provisions of the Nebraska Jail Standards since respondants [sic] has [sic] deliverately [sic] refusal [sic] to provide petitioner proper medical care for serious life threating [sic] medical conditions.

3. Forbid respondants [sic] from placing petition [sic] in the prison hospital for any reason without the signed authorization of petitioner or a court order.

. . . .

5. Mandate that any further treatment of petitioner must be placed in writing, signed by the doctor and a copy of same be provided to petitioner.

C) MONETARY DAMAGES;

1. Punitave [sic] danages [sic] in the amount of Fifty million Dollars in their official capacity for the denials of medical care.

2. Punitive damages in the amount of fifty million dollars in their individual capacity for the denial of proper medical care.

Unlabeled requests:

D. Order the Nebraska State Patrol to start a criminal investigation for charges against the respondants [sic].

E. Order respondants [sic] to pay the cost of this litigation including the reimbursement to petitioner for postage and copies in connection with this case.

F. Any and all costs and relief this court deems just.

Taking the allegations of the first cause of action and the relief sought as a whole, it is apparent that Russell has invoked the equitable power of the court. Russell requests that the court make various rulings, orders, and pronouncements which, regardless of whether labeled as "Injunctive Relief" or "Declaratory Judgement," can only be classified as equitable in nature. Such equitable relief includes rulings that the Relators had deliberately denied him proper medical care, had deliberately caused him permanent pain and injury, and had attempted to cause his death; an order directed to the Nebraska Medical Board to take action with respect to the Relators' medical licenses; an order of the court releasing Russell from prison; a prohibition on placing Russell in the prison hospital without Russell's authorization or a court order; a mandate that further medical treatment of Russell must be pursuant to written directives; and an order to the Nebraska State Patrol to initiate criminal investigations for charges against the Relators. Russell further prays for "[a]ny and all costs and relief this court deems just," a prayer which has been deemed to invoke the equitable power of the court. *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995). Taken as a whole, Russell asks the court to declare that the Relators have denied him proper medical care, prevent them from continuing to deny him such care in the future, and provide other equitable relief.

In addition to the equitable relief that is the main object of Russell's cause of action, Russell makes a request for punitive damages "in the amount of fifty million dollars." We have held that ordinarily, with respect to state causes of action, punitive damages contravene Neb. Const. art. 7, § 5, and are not allowed. *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), *disapproved on other grounds, Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413 (1998); *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989); *Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684 (1960). However, Russell has brought his claim in state court under federal civil rights law,

§ 1983, and the U.S. Supreme Court has held that punitive damages are recoverable under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

The Supremacy Clause of U.S. Const. art. VI obligates state courts " 'to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.' " *Felder v. Casey*, 487 U.S. 131, 151, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988) (quoting *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S. Ct. 246, 87 L. Ed. 2d 239 (1942)). See, also, *Shearer v. Leuenberger,* 256 Neb. 566, 575, 591 N.W.2d 762, 768 (1999) (recognizing that although states have concurrent jurisdiction to hear § 1983 actions, "as a result of the Supremacy Clause found in U.S. Const. art. VI, federal law is controlling and preempts any conflicting state law"). Accordingly, we acknowledge that punitive damages are recoverable in a suit filed in Nebraska state court pursuant to § 1983. Therefore, Russell may seek punitive damages in this § 1983 equity action brought in state court, and his federal substantial right to punitive damages is thereby protected. See *Garrett, supra*.

The Relators focus on Russell's punitive damages request to emphasize their contention that this action is at law and should be tried to a jury in state court. In so doing, they rely on the U.S. Supreme Court's opinions in *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999), and *Tull v. United States*, 481 U.S. 412, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987). The Relators' arguments are unpersuasive.

As noted above, we read *City of Monterey* to permit a trial to the court in a § 1983 action, depending on the substance of the action as pled, and we distinguish *Tull*. *Tull* involved an action brought by the government under the Clean Water Act, 33 U.S.C. §§ 1311, 1344, and 1362(7) (1994), seeking civil penalties and injunctive relief. The *Tull* Court held that the case was analogous to actions in debt which were " 'suits at common law' " within the meaning of the Seventh Amendment and, therefore, a jury was required. 481 U.S. at 416. In contrast to the

civil penalties under the Clean Water Act, which the *Tull* Court found to serve as a remedial purpose to compensate for past acts, the punitive damages that Russell seeks in his § 1983 action serve the equitable purpose of deterring future misconduct.

Because the *City of Monterey* opinion construed § 1983, as opposed to the *Tull* opinion which construed the Clean Water Act, we find that the pronouncements in *City of Monterey* give the more specific guidance on jury entitlement in a § 1983 action, and therefore, we follow *City of Monterey*. We read *City of Monterey* to permit a trial to the court of a § 1983 action if the pleadings so indicate. We further observe that the *Tull* Court noted that although a jury was required to determine liability under the Clean Water Act, the Court indicated that it had "been presented with no evidence that the Framers [of the Seventh Amendment] meant to extend the right to a jury to the remedy phase of a civil trial." 481 U.S. at 426 n.9. Accordingly, we conclude there is no federal preemptive prohibition to the state trial court's consideration of Russell's punitive damages request without a jury.

Although the punitive damages requested by Russell constitute permissible relief under federal law and are therefore recoverable in the underlying state court action, the main object of Russell's action remains equitable in nature. The relief requested by Russell is overwhelmingly equitable, and the fact that he has included a request for $50 million as punitive damages does not change the inherent nature of the action. In this regard, we note the prayer for monetary relief is neither compensatory or nominal in nature nor tied to any identifiable damage Russell is alleged to have actually suffered. Indeed, the very magnitude of the dollar amount requested persuades us that punitive damages are not the main object of the action, but, rather, serve as an allegation by Russell that the Relators' conduct is viewed by Russell as demonstrating a deliberate indifference to his civil rights and that a punitive damages award would tend to deter such acts in the future. Notwithstanding the prayer for punitive damages, we determine that the underlying action in this case is equitable in nature.

Because the underlying action is equitable in nature and the district court has properly acquired jurisdiction of the action as a court of equity, under Nebraska jurisprudence the district court may properly determine all issues in the action and grant such legal or equitable relief as it deems proper. See, *Dillon Tire, Inc. v. Fifer*, 256 Neb. 147, 589 N.W.2d 137 (1999); *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995); *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994); *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988); *Ames v. Ames*, 75 Neb. 473, 106 N.W. 584 (1906).

In concluding that the district court, without a jury, may properly determine both the claims for equitable relief and the request for punitive damages, we note the case *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986). In *Schroeder*, an action was brought by the Attorney General pursuant to Neb. Rev. Stat. § 59-1608 (Reissue 1984) of the Consumer Protection Act. We concluded that the principal thrust of the act was equitable in nature and that the trial court properly denied the defendant's request for a jury trial in that case notwithstanding the fact that recovery could include an attorney fee, restoration of the purchase price, and the imposition of civil penalties. In *Schroeder*, we stated that the monetary consequences which might be imposed therein were designed to "discourage future like acts and practices" but were ancillary to the main action. 222 Neb. at 477, 384 N.W.2d at 630. The civil penalties in *Schroeder* bear a resemblance to the punitive damages sought by Russell under the federal law in that both are designed to deter future like acts. *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983) (stating that punitive damages in § 1983 cases are awarded to deter similar conduct in future); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (stating that deterrence of future misconduct is important purpose of both punitive damages and § 1983). *Schroeder* reiterates the principle that there is no constitutional right to a jury trial where the thrust of the claim is equitable in nature, and upon gaining jurisdiction of the case in equity, the district court may properly determine all issues in the action and grant equitable and legal relief notwithstanding the possible award of civil penalties.

Because we conclude that the Relators do not have a clear right to the relief they seek and that the Respondent does not have a clear duty to perform the act they request, mandamus is not appropriate. In view of our conclusion, we need not consider whether the Relators had other plain and adequate remedies available in the ordinary course of the law.

## CONCLUSION

We find that mandamus is not appropriate because the Relators do not have a clear right to a jury trial in the underlying equitable action and the Respondent does not have a corresponding clear duty to grant such jury trial. We therefore decline to issue a peremptory writ of mandamus.

PEREMPTORY WRIT DENIED.