Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/08/2024 09:07 AM CST

PSK, LLC, APPELLANT, V. LEGACY OUTDOOR
ADVERTISING, LLC, APPELLEE.

___ N.W.3d ___

Filed November 8, 2024.    No. S-23-908.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
4. **Actions: Pleadings: Equity.** The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations of the petition determine whether a particular action is one at law to be tried to a jury or in equity to be tried to a court.
5. ____: ____: ____. The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. This determination is unaffected by the conclusions of the pleader or whether or not the pleader denominates the case as one at law or in equity.
6. **Trial: Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.
7. **Real Estate: Property: Annexation.** Whether an article annexed to the real estate has become a part thereof is a mixed question of law and fact.

8. **Quiet Title.** Quiet title actions generally require (1) allegations of facts showing the plaintiff's ownership, title, or interest in the property in dispute; (2) the plaintiff's actual or constructive possession (if possession is a condition of the right to maintain the action) or entitlement to possession of the property in dispute; and (3) the existence and invalidity of the defendant's interest, claim, or lien adverse to the plaintiff.

9. ____. The party seeking to quiet title must recover, if at all, on the strength of its own title and not on the weakness of its adversary's title.

10. **Equity.** The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand.

11. **Equity: Quiet Title.** In quiet title actions, one who seeks equity must do equity.

12. **Records: Notice: Equity.** Nebraska's recording acts have not abolished the equity rule as to actual and constructive notice; thus, every purchaser will be charged with notice of every fact which an inquiry, if made, would have given him or her.

13. **Trial: Witnesses: Testimony.** Witness credibility and the weight to be given a witness' testimony are questions for the trier of fact.

14. **Equity.** Equity looks through form to substance. Thus, a court of equity goes to the root of the matter and is not deterred by form.

15. **Property: Appurtenances: Words and Phrases.** The term "fixture" refers to a chattel which is capable of existing separately and apart from realty, but which, by actual annexation and appropriation to the use or purpose of the realty with the intention of making it a permanent accession thereto, becomes a part of the realty.

16. **Property: Appurtenances: Intent.** To determine whether an item constitutes a fixture requires an appellate court to look at three factors: (1) actual annexation to the realty, or something appurtenant thereto; (2) appropriation to the use or purpose of that part of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold.

17. ____: ____: ____. Of the three factors determining whether an item constitutes a fixture, the most important is the intention to make the article a permanent accession to the freehold. The other two factors, annexation and appropriation to the use of the realty, have value primarily as evidence of such intention.

18. ____: ____: ____. The intention of the party making the annexation can be inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made. Additionally, the intention of the parties may be made manifest by an agreement between the parties.

19. **Property: Appurtenances: Words and Phrases.** Fixtures are chattel property brought in and upon and annexed to real property but which retain their separate identity and become realty, but which may under certain circumstances become personalty again.

20. **Property: Appurtenances.** In considering the issue of annexation, an important factor is whether removal of the article will injure the realty or will injure the article itself.

21. \_\_\_\_: \_\_\_\_. If a chattel is a necessary or useful adjunct to the realty, then it may be said generally to have been appropriated to the use or purpose of the realty to which it was affixed.

Appeal from the District Court for Buffalo County, JOHN H. MARSH, Judge. Affirmed.

Bradley D. Holbrook and Bryce T. Sealock, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Steven W. Olsen and Elizabeth A. Stobel, of Simmons Olsen Law Firm, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## I. INTRODUCTION

After PSK, LLC, purchased a commercial property, a dispute arose over the ownership of a billboard located there. PSK sued Legacy Outdoor Advertising, LLC (Legacy), seeking to quiet title to the billboard in PSK's name. The district court entered judgment against PSK and in favor of Legacy, finding the billboard was Legacy's removable personal property. PSK appeals. Driven by the standard of review, we find no merit to the assignments of error. We affirm the judgment.

## II. BACKGROUND

### 1. PREVIOUS OWNERSHIP OF COMMERCIAL PROPERTY

For approximately 20 years, a husband and wife—Jerry Arent (now deceased) and Gaylene Arent—owned the commercial

property, sometimes transferring ownership between themselves and their solely owned entities. The entities were JGA Enterprises, LLC; Silent City, Inc.; and Centre Service, Inc. The Arents developed the real estate, adding a convenience store, a carwash, a strip mall, and the billboard.

The photograph below is an excerpt from an exhibit received in evidence, which depicts the commercial property inside a yellow border. The real estate is legally described as "Lot 5, North Acre Fourth Addition to the City of Kearney, Buffalo County, Nebraska, except a tract of land containing 468.39 square feet, more or less, deeded to the State of Nebraska, Department of Roads by Warranty Deed recorded October 27th, 1999 as Inst. 1999-8531." For illustrative purposes only, we have added a red arrow pointing to the billboard.



The billboard is a freestanding, steel structure with four "faces"—two facing north and two facing south. It is supported by a "single base structure pole" set in a concrete foundation. According to Gaylene, it was constructed sometime between 1999 and September 2006.

## 2. SALE OF BILLBOARD AND
### LEASE AGREEMENT

In 2010, the Arents agreed to sell the billboard to Russell Hilliard (Russell), who owned a billboard business (USA Outdoor), for $60,000. Centre Service, as seller, entered into a purchase agreement with USA Outdoor, as buyer, for the sale of the billboard to USA Outdoor. The purchase agreement stated that the "closing . . . shall take place on or before April 1, 2010." Centre Service and USA Outdoor also entered into a security agreement, with Centre Service as the secured party and USA Outdoor as the debtor.

At the same time, a lease agreement was executed between JGA Enterprises, as lessor, and USA Outdoor, as lessee, to lease the "portion of real estate belonging to [JGA Enterprises] (where the [billboard] is located only)" to USA Outdoor. The lease agreement commenced on April 1, 2010, and provided:

> The term of this Lease shall be for a period of fourteen (14) years from this date. This Lease shall automatically renew for two (2) consecutive ten-year terms unless written notice is given to [JGA Enterprises] by [USA Outdoor] thirty (30) days prior to the date of the applicable renewal term. If [JGA Enterprises] shall sell the above-referenced real estate any time during this Agreement, the new LESSOR shall honor all terms and conditions of this Agreement. The new LESSOR shall provide [USA Outdoor] with the correct payee information for all future payments to be made.

The lease agreement also stated, in pertinent part, "All equipment and materials currently owned by or placed upon the leased real estate by [USA Outdoor] shall remain the property of [USA Outdoor] and may be removed by it at any time prior to or within a reasonable time after the expiration of the final term of this Lease." The lease agreement was never recorded.

Following the sale, USA Outdoor held all permits and certifications for the billboard, paid the occupancy taxes, made the monthly rent payments under the lease agreement, handled

all advertising on the billboard, and maintained the billboard and the land on which it was located. Other than collecting the rent payments, the Arents had "nothing to do" with it from then on.

### 3. Loan From Exchange Bank

In 2012, Silent City obtained a loan from Exchange Bank. The Arents executed a deed of trust—which listed Silent City as the trustor and Exchange Bank as the trustee and beneficiary—in the amount of approximately $1.6 million. The deed of trust stated that Silent City conveyed to Exchange Bank "all of [Silent City's] right, title, and interest in and to the [real estate legally described above], together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; . . . and all other rights, royalties, and profits" relating to the real property.

The court received in evidence numerous business records of Exchange Bank. One record was a promissory note executed between Silent City, as borrower, and Exchange Bank, as lender, for the loan. The note stated that its purpose was to "Refinance FirsTier Bank Commercial Real Estate Debt."

Exchange Bank's records showed that in 2008, the Arents executed a deed of trust between JGA Enterprises, as trustor, and FirsTier Bank, as trustee and beneficiary. That deed of trust listed as secured debts a loan in the amount of approximately $1.8 million and "[a]ll present and future debts" from JGA Enterprises, Centre Service, Silent City, and the Arents to FirsTier Bank.

### 4. Proposed Sale of Commercial Property

PSK first became interested in purchasing the commercial property in 2018, when one of its members "stopped in" to look at the convenience store. From the bill of exceptions, we learn that PSK's members include three brothers and their mother. We recognize that the legal entity is separate and distinct from its members, but for purposes of this opinion, we

will generally refer to PSK and its members interchangeably as "PSK."

In the summer of 2019, PSK met with Gaylene at the property and made an offer to purchase it. Gaylene rejected the offer. In the fall of 2019, PSK met with a "realtor" and made the same offer, which was not accepted. As relevant here, both Gaylene and the realtor testified that they informed PSK of the separate ownership of the billboard.

### 5. Subsequent Sale of Billboard
### and Assignment

In 2019, Legacy purchased all of USA Outdoor's assets, including the billboard, and assumed all obligations of USA Outdoor. The court received documentary evidence of the sale, including a Uniform Commercial Code (U.C.C.) financing statement that listed as collateral "[a]ll billboard structures" purchased by Legacy from USA Outdoor.

### 6. Default and Trustee's Sale

The Arents eventually defaulted on the loan from Exchange Bank, and the bank held a trustee's sale in January 2020. PSK purchased the property at the trustee's sale.

A representative of Exchange Bank, as trustee, executed a trustee's deed and bill of sale in favor of PSK, conveying the real estate legally described above and the "interest of Silent City, Inc., in and to all service station equipment, convenience store equipment, inventory, carwash equipment and supplies, and fixtures, used in connection" with the real estate. The trustee's deed was recorded in the Buffalo County register of deeds.

### 7. Communications Between
### PSK and Legacy

After PSK purchased the property, a dispute arose over the billboard. PSK maintains that it first became aware of another's claim to an interest in the billboard sometime after the trustee's sale, when Legacy asked whether PSK would be interested in advertising on it. At that point, PSK asked for

more information regarding the billboard, and Legacy sent PSK the purchase agreement and the lease agreement.

## 8. Pleadings

PSK filed a quiet title action against Legacy. The complaint alleged that PSK was the title owner of "the [p]roperty and its appurtenances, including the billboard" by virtue of the trustee's deed and that PSK had "no actual or constructive notice" of Legacy's claim to title or any legal interest before purchasing the property at the trustee's sale. PSK requested a judgment quieting fee simple title to the "[p]roperty and its appurtenances, including the billboard," in its name; an order enjoining Legacy from asserting "any right, title, interest, lien, claim, or demand to or upon the [p]roperty or its appurtenances, including the billboard"; damages; and "such other relief that the [c]ourt may deem just and equitable."

In its answer, Legacy specifically denied that the billboard "constitutes a part" of PSK's property, and it set forth two counterclaims. One sought to quiet title to the billboard and a leasehold interest in Legacy's name. That counterclaim is not at issue on appeal, so we do not discuss it further.

Particularly relevant here, the other counterclaim sought a declaratory judgment. Legacy generally alleged that it owned the billboard as removable personal property, based upon the terms of the lease agreement and the intentions of the parties' "predecessors in interest." It requested the court to enter a judgment declaring that Legacy would maintain "complete ownership" of the billboard and, if the lease agreement was found to be invalid, granting Legacy leave to enter the property to remove the billboard and restore the underlying real estate to its former condition. Legacy also requested the court to tax the cost and expenses against PSK and to grant such other and further relief as is necessary and proper.

## 9. Bench Trial

The district court held a 3-day bench trial, during which it heard the testimony of several witnesses and received

numerous exhibits. We summarize the evidence on pertinent issues not already discussed.

The court heard competing evidence on whether PSK had notice of the separate ownership of the billboard before purchasing the commercial property. As noted above, the lease agreement was not recorded. For its part, PSK focused on the lack of a recorded instrument, and it denied that any individual or source had put it on notice of another's claim of ownership, title, or interest before the trustee's sale.

Legacy adduced evidence that at all relevant times, there was a sign on the billboard, measuring 6 feet wide by 2 feet tall, that displayed "USA Outdoor," along with a telephone number. The picture below is an excerpt of an exhibit that shows the sign on the bottom right corner of the billboard. PSK was familiar with the sign but did not, at any point, attempt to call the telephone number to obtain information on the billboard.



Among other things, the business records of Exchange Bank included an appraisal of the commercial property that was completed in 2019 as part of the foreclosure process. In pertinent part, the 2019 appraisal estimated the potential income for the "strip mall facility and the ATM and billboard rent," which were described as the "properties that are leased." The estimated income for the billboard rent was "150/mth," with a "Total Income" of "$1,800." Other evidence corroborated that USA Outdoor, and later, Legacy, paid $150 per month to lease the portion of the real estate on which the billboard was located. There was no other information on the billboard in the 2019 appraisal.

Finally, the court heard the uncontroverted testimony of Russell's son, a member of Legacy, regarding the potential removal of the billboard for use in another location. The son testified that he had been involved in the removal of several billboards, including at least one situation that required lifting a similar "monopole" billboard and concrete foundation. Based on his past experiences, the son opined that removing the billboard in this case would take "less than an hour, probably less than 30 minutes," and that the real estate would be "fully restored" to its "original condition."

## 10. District Court's Judgment

The district court entered judgment against PSK and in favor of Legacy. The court dismissed PSK's quiet title action, finding PSK failed to prove its ownership of the billboard and failed to establish the "invalidity of [Legacy's] interest in the property." It also found that PSK had notice[1] of another's claim of ownership regarding the billboard.

Turning to Legacy's declaratory judgment counterclaim, the court determined that the billboard is Legacy's removable personal property and not a fixture attached to the real estate.

---

[1] See Neb. Rev. Stat. § 76-238 (Reissue 2018).

Applying Nebraska's three-factor test,[2] it reasoned that (1) while the billboard is "connected to the real estate with the base set in a concrete foundation," its removal would probably be no more of a "significant operation" than removing the underground pipelines as addressed in a previous case[3]; (2) the billboard creates an additional "income stream" for the owner of the land, but the convenience store and other businesses on the property could operate without it; and (3) the Arents and their entities "clearly intended" to sever the ownership of the billboard from the real property and convey it to USA Outdoor. Regarding the last factor, the court highlighted the provision in the lease agreement providing that the billboard remained removable personal property, and it noted that the parties' intent was the "most important factor" when making its determination.

PSK filed a timely appeal, which we moved to our docket.[4]

## III. ASSIGNMENTS OF ERROR

PSK assigns five errors, which we reorder for discussion in the analysis section. Four assignments challenge the court's dismissal of PSK's quiet title action. PSK assigns that the court erred in (1) determining that PSK failed to establish ownership, title, and interest in the billboard; (2) failing to find PSK had title to the billboard by way of a trustee deed and bill of sale; (3) finding that PSK failed to establish that it had a superior interest in the property compared to Legacy because Legacy's chain of title was not readily identifiable; and (4) determining that PSK was not a good faith purchaser of the billboard because such a determination was not required.

The other assignment pertains to the declaratory judgment counterclaim. PSK assigns that the district court erred in

---

[2] See *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *overruled on other grounds, Vandenberg v. Butler County Bd. of Equal.*, 281 Neb. 437, 796 N.W.2d 580 (2011).

[3] See *id*.

[4] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

finding the billboard was removable personal property and therefore not a fixture under Nebraska law.

## IV. STANDARD OF REVIEW

[1,2] A quiet title action sounds in equity.[5] In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[6]

[3-6] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.[7] We have previously explained:

> The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations of the petition determine whether a particular action is one at law to be tried to a jury or in equity to be tried to a court. . . . The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. This determination is unaffected by the conclusions of the pleader or whether or not the pleader denominates the case as one at law or in equity.[8]

The allegations and the relief sought by Legacy show that the "main object"[9] of the declaratory judgment counterclaim was

---

[5] *Castillo v. Libert Land Holdings 4*, 316 Neb. 287, 4 N.W.3d 377 (2024).

[6] *Dzingle v. Krcilek*, 317 Neb. 68, 8 N.W.3d 757 (2024).

[7] *State ex rel. Brooks v. Evnen*, 317 Neb. 581, 10 N.W.3d 887 (2024).

[8] *State ex rel. Cherry v. Burns*, 258 Neb. 216, 223-24, 602 N.W.2d 477, 482-83 (1999) (citations omitted). Accord *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022).

[9] *State ex rel. Cherry v. Burns, supra* note 8, 258 Neb. at 223, 602 N.W.2d at 482.

legal in nature.[10] At oral argument, PSK agreed that the counterclaim sounded in law. This familiar standard controls: In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.[11]

[7] Whether an article annexed to the real estate has become a part thereof is a mixed question of law and fact.[12]

## V. ANALYSIS

### 1. Dismissal of Quiet Title Claim

We first consider whether the district court erred in dismissing PSK's quiet title claim.

#### (a) General Principles

A quiet title action may be brought by any person "claiming title to, or an estate in real estate" against any others who "claim, or apparently have an adverse estate or interest therein, for the purpose of determining such estate, or interest, . . . and quieting the title to real estate."[13]

[8,9] Quiet title actions generally require (1) allegations of facts showing the plaintiff's ownership, title, or interest in the property in dispute; (2) the plaintiff's actual or constructive possession (if possession is a condition of the right to maintain the action) or entitlement to possession of the property in dispute; and (3) the existence and invalidity of the defendant's interest, claim, or lien adverse to the plaintiff.[14] Moreover,

---

[10] See *Timberlake v. Douglas County*, 291 Neb. 387, 392, 865 N.W.2d 788, 793 (2015) ("[w]hen a declaratory judgment dispute sounds in contract, the action is treated as one at law").

[11] *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015).

[12] *Id.*

[13] Neb. Rev. Stat. § 25-21,112 (Reissue 2016).

[14] See *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020).

the party seeking to quiet title must recover, if at all, on the strength of its own title and not on the weakness of its adversary's title.[15]

### (b) PSK's Arguments

#### (i) Reliance on Bill of Sale and U.C.C.

As a preliminary matter, we observe that several of PSK's arguments rely upon its bill of sale and provisions of Nebraska's U.C.C.[16] For purposes of making such arguments, PSK assumes that the billboard constitutes personal property. Because the billboard must be part of the real estate—and not personal property—for PSK to prevail on its quiet title claim,[17] we do not discuss those portions of PSK's arguments further.

#### (ii) PSK's Trustee's Deed

PSK asserts that it held title to the billboard by virtue of its trustee's deed. In this regard, PSK contends that the billboard was included in its purchase of the real estate, and it attempts to trace title to the billboard to an interest in the real estate previously held by FirsTier Bank. It is undisputed that the deed of trust in favor of FirsTier Bank, the subsequent deed of trust in favor of Exchange Bank, and PSK's trustee's deed were recorded.

PSK generally argues that the billboard was "at all times subject to a valid lien which was never released"[18] and that therefore, any interest held by USA Outdoor was inferior to the interest of the lenders. PSK also argues that any act of dominion or control over the billboard by USA Outdoor or

---

[15] See id.

[16] See, Neb. U.C.C. § 9-109 (Reissue 2020); Neb. U.C.C. § 9-203 (Reissue 2020); Neb. U.C.C. § 9-310 (Cum. Supp. 2022); Neb. U.C.C. § 9-322 (Reissue 2020); Neb. U.C.C. § 9-610 (Reissue 2020); Neb. U.C.C. § 9-617 (Reissue 2020).

[17] See § 25-21,112.

[18] Brief for appellant at 35.

Legacy constituted a "conversion"[19] of the secured parties' interest in the billboard, though PSK did not allege a conversion claim in its complaint.

Assuming without deciding that the billboard was part of the real estate conveyed to PSK by the trustee's deed, we reject PSK's contention that its ownership, title, or interest in the billboard was superior to Legacy's. In its complaint, PSK alleged that it had "no actual or constructive notice" of Legacy's claim to title or any legal interest before purchasing the property at the trustee's sale. On appeal, PSK argues that the district court's application of § 76-238 was "wholly irrelevant."[20] We disagree.

Section 76-238(1) provides, in pertinent part, that

all deeds, mortgages, and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering such instruments to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice. *All such instruments are void as to all creditors and subsequent purchasers without notice whose deeds, mortgages, or other instruments are recorded prior to such instruments.*

(Emphasis supplied.)

[10-12] PSK's quiet title action sounds in equity.[21] The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand.[22] In quiet title actions, we apply the maxim that "one who seeks equity must do equity."[23] And, as Legacy points out, this court has previously explained:

---

[19] *Id.*

[20] *Id.* at 44.

[21] See *Castillo v. Libert Land Holdings 4, supra* note 5.

[22] *Id.*

[23] *Id.* at 307, 4 N.W.3d at 392.

"[T]he recording acts have not abolished the equity rule as to actual and constructive notice." Under this rule, we consider whether there are circumstances which, in the exercise of common reason and prudence, ought to put a [person] upon particular inquiry. If so, then the purchaser will be charged with notice of every fact which an inquiry, if made, would have given him or her.[24]

Stated differently, Nebraska's recording acts have not abolished the equity rule as to actual and constructive notice; thus, every purchaser will be charged with notice of every fact which an inquiry, if made, would have given him or her.[25]

[13] PSK had notice of the separate ownership of the billboard and failed to satisfy its duty of inquiry. Gaylene's testimony and the deposition testimony of the realtor suggest that PSK had actual notice of the billboard's separate ownership. Both individuals represented that they informed PSK of the separate ownership in 2019. And while PSK challenges the credibility of their testimony, witness credibility and the weight to be given a witness' testimony are questions for the trier of fact.[26] We give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[27]

The record also shows that PSK had constructive notice. As one example, PSK visited the property and admitted that it was aware of the large sign on the billboard that prominently displayed "USA Outdoor," along with a telephone number. The circumstances, in the exercise of common reason and prudence, ought to have put PSK on particular inquiry. Yet PSK did not call the telephone number to obtain information on the billboard or otherwise attempt to obtain information

---

[24] *Skyline Woods Homeowners Assn. v. Broekemeier*, 276 Neb. 792, 811, 758 N.W.2d 376, 390-91 (2008).

[25] See *id.*

[26] *Amanda F. v. Daniel K.*, 313 Neb. 573, 984 N.W.2d 909 (2023).

[27] See *Dzingle v. Krcilek, supra* note 6.

regarding USA Outdoor's potential interest. On this record, we cannot conclude that the district court erred in determining that PSK had notice of the billboard's separate ownership before the trustee's sale. PSK has failed to prove the strength of its own title.

### (iii) Purported Defects in Legacy's Chain of Title

PSK next argues that its interest in the deeded real estate, purportedly including the billboard, is superior to Legacy's interest, because Legacy's chain of title was not "readily identifiable."[28] PSK asserts that the evidence on the sale of the billboard to USA Outdoor was "based wholly"[29] on the testimony of Russell and Gaylene, and it attacks the weight and credibility of their testimony. Further, PSK asserts that Legacy failed to present evidence showing that Centre Service owned the billboard, had power to transfer it, or "actually transferred title and possession"[30] of the billboard to USA Outdoor.

We see no merit in PSK's argument. The district court found the testimony of Russell and Gaylene to be credible, and their testimony is corroborated by other evidence. The Arents and USA Outdoor conducted business for nearly 10 years as though USA Outdoor had purchased the billboard.

[14] We have long said that equity looks through form to substance. Thus, a court of equity goes to the root of the matter and is not deterred by form.[31] We read PSK's argument to suggest that the sale of the billboard to USA Outdoor was invalid, because it is unclear which of the Arents or their entities owned the billboard when the purchase agreement was executed. In this equity action, PSK's focus on alleged discrepancies between the entities listed in the various agreements,

---

[28] Brief for appellant at 35.

[29] *Id.* at 37.

[30] *Id.*

[31] *Seid v. Seid*, 310 Neb. 626, 967 N.W.2d 253 (2021).

without more, is not a ground entitling PSK to judgment quieting title in its favor.

Having reviewed the record de novo, we reach the independent conclusion that PSK failed to prove its quiet title claim. The court did not err in dismissing it.

## 2. Declaratory Judgment Counterclaim

Turning to the declaratory judgment counterclaim, PSK asserts that the district court erred in finding the billboard was removable personal property and therefore not a fixture under Nebraska law.

At the outset, we recall the applicable standard of review.[32] The trial court's factual findings have the effect of a jury verdict, which this court will not disturb on appeal unless clearly wrong, and we consider the judgment in the light most favorable to Legacy and resolve evidentiary conflicts in Legacy's favor.

### (a) General Law on Fixtures
### Versus Personal Property

[15,16] The term "fixture" refers to a chattel which is capable of existing separately and apart from realty, but which, by actual annexation and appropriation to the use or purpose of the realty with the intention of making it a permanent accession thereto, becomes a part of the realty.[33] To determine whether an item constitutes a fixture requires an appellate court to look at three factors: (1) actual annexation to the realty, or something appurtenant thereto; (2) appropriation to the use or purpose of that part of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold.[34]

---

[32] See *Griffith v. Drew's LLC, supra* note 11.

[33] *Copple Constr. v. Columbia Nat. Ins. Co.*, 279 Neb. 60, 776 N.W.2d 503 (2009).

[34] *Id.*

Here, PSK argues that the district court misapplied all three factors. We disagree.

### (b) Application

Viewing the evidence in the light most favorable to Legacy, we see no clear error in the district court's determination that the billboard was Legacy's removable personal property.

### (i) Arents' Intention Controls

[17] The district court correctly focused on the Arents' intention, as evidenced by the agreements with USA Outdoor. Of the three factors determining whether an item constitutes a fixture, we have said that the most important is the intention to make the article a permanent accession to the freehold.[35] "The other two factors, annexation and appropriation to the use of the realty, have value primarily as evidence of such intention."[36]

[18] The intention of the party making the annexation can be inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.[37] Additionally, "The intention of the parties may be made manifest by an agreement between the parties. 'Even "fixtures" are not real estate when understood by the parties involved to be personal property.'"[38]

The court received in evidence the purchase agreement, the security agreement, and the lease agreement executed between the Arents and USA Outdoor. These agreements demonstrated the Arents' intention to transfer the ownership of the billboard to USA Outdoor on April 1, 2010. And the lease agreement provided for the billboard's removal by

---

[35] *Northern Natural Gas Co. v. State Bd. of Equal., supra* note 2.

[36] *Id.* at 817, 443 N.W.2d at 257.

[37] *Northern Natural Gas Co. v. State Bd. of Equal., supra* note 2.

[38] *Bank of Valley v. U.S. Nat. Bank*, 215 Neb. 912, 915, 341 N.W.2d 592, 595 (1983).

USA Outdoor upon the termination of the lease agreement or within a reasonable time thereafter. In previous cases, we have placed great weight on similar agreements.[39] We see no reason to do otherwise here.

For nearly 10 years, the Arents and USA Outdoor conducted business as if USA Outdoor owned the billboard as separate personal property. USA Outdoor held the permits and certifications, paid the occupancy taxes, made the rent payments under the lease agreement, handled the advertising, and maintained the billboard and the land on which it was located. The Arents had "nothing to do" with it, aside from collecting the rent.

[19] PSK directs us instead to Gaylene's testimony that when the billboard was erected, the Arents intended that it would not be removed or sold separately to anyone. We read PSK's argument to suggest that any change in the Arents' intention did not matter. However, we have previously said that fixtures are chattel property brought in and upon and annexed to real property but which retain their separate identity and become realty, *but which may under certain circumstances become personalty again*.[40] Here, even if the billboard became realty at some point, the district court's finding that it was personal property after 2010, when the Arents' "clearly intended" to sell it to USA Outdoor, was not clearly wrong.

### (ii) Other Factors

[20] Regarding the first factor, PSK contends that the district court failed to consider the "manner in which" the billboard is attached to the realty.[41] In its judgment, the court stated:

> *The billboard is connected to the real estate with the base set in a concrete foundation.* [Legacy's] principal has

---

[39] See, e.g., *Bank of Valley v. U.S. Nat. Bank, supra* note 38; *Freeman v. Lynch*, 8 Neb. 192, 199 (1879) ("[p]arties by contract may make such arrangements as to the removal of fixtures as they see fit").

[40] *Frost v. Schinkel*, 121 Neb. 784, 238 N.W. 659 (1931).

[41] Brief for appellant at 38.

been involved in removing billboards a number of times. The removal would require using a crane. The use of a crane seems to be [a] significant operation but probably no more than removing buried underground pipelines as addressed [in a previous] case.[42]

(Emphasis supplied.) The language that we italicized shows that the court considered the manner in which the billboard is attached to the real estate. Moreover, we see no clear error in the court's findings. In considering the issue of annexation, an important factor is whether removal of the article will injure the realty or will injure the article itself.[43] Here, the court heard uncontroverted testimony that removing the billboard would take "less than an hour, probably less than 30 minutes" and that the real estate would be "fully restored" to its "original condition."

[21] Turning to the second factor, PSK argues that the district court held, in essence, that the billboard must be "absolutely necessary"[44] to the function of the convenience store. PSK also asserts that the court erred in failing to find that the billboard "provided utility"[45] to the owners and potential purchasers of the property. Again, we see no clear error in the district court's findings. If a chattel is a necessary or useful adjunct to the realty, then it may be said generally to have been appropriated to the use or purpose of the realty to which it was affixed.[46]

We agree with Legacy that this case is distinguishable from *Denny Wiekhorst Equip. v. Tri-State Outdoor Media*,[47] a prior billboard case. There, the real estate was approximately 5 feet

---

[42] See *Northern Natural Gas Co. v. State Bd. of Equal., supra* note 2.

[43] *Id.*

[44] Brief for appellant at 40.

[45] *Id.* at 42.

[46] *Northern Natural Gas Co. v. State Bd. of Equal., supra* note 2.

[47] *Denny Wiekhorst Equip. v. Tri-State Outdoor Media*, 269 Neb. 354, 693 N.W.2d 506 (2005).

wide at one end and 28 feet wide on the other, and approximately 60 feet long. There was evidence that the property was of little use for any purpose other than a billboard. By contrast, PSK's property has several uses—including, but not limited to, the convenience store, the carwash, and the strip mall—none of which have ever made use of the billboard. Viewed in the light most favorable to Legacy, this billboard has "no special or peculiar adaptation to th[e] particular [realty], and [is] either adapted to general use or to use with equal efficiency in any like establishment."[48]

As noted above, these factors—annexation and appropriation to the use of the realty—have value primarily as evidence of the Arents' intention.[49] Here, when the Arents' intention is viewed as a whole, and in light of these factors, the district court did not clearly err in finding that the billboard was Legacy's removable personal property and not a fixture of PSK's real estate.

## VI. CONCLUSION

Reviewing the record de novo, we conclude that PSK failed to prove its quiet title claim and that thus, the district court did not err in dismissing it. And viewing the evidence in the light most favorable to Legacy, we see no clear error in the court's determination that the billboard was removable personal property. We therefore affirm the district court's judgment.

Affirmed.

---

[48] *Hillebrand v. Nelson*, 1 Neb. (Unoff.) 783, 788, 95 N.W. 1068, 1070 (1901).

[49] See *Northern Natural Gas Co. v. State Bd. of Equal., supra* note 2.